(No. 7260.   November 14, 1945.)

STATE OF IDAHO, Plaintiff-Respondent, v. E. A. BRANCH, Defendant-Appellant.

[164 P. (2d) 182.]
Rehearing denied December 18, 1945.

J. W. Taylor for appellant.

Frank Langley, Attorney General; J. R. Smead, Assistant Attorney General; Everett M. Sweeley, Prosecuting Attorney, and Ray D. Agee, Assistant Prosecuting Attorney, for respondent.

MILLER, J.—On April 23, 1945, an information was filed in the District Court of Twin Falls County, Idaho, charging appellant with having, on or about February 12, 1945, committed the crime of grand larceny, by stealing a Guernsey heifer calf about ten months old, weighing about 265 pounds, and the personal property of one C. H. Ferguson. At the April term of District Court of said county appellant was tried before a jury, found guilty as charged, and sentenced to serve a term in the Idaho State Penitentiary of not less than one nor more than fourteen years at hard labor, and to pay the costs of prosecution.

Tne appeal is from the judgment. The material assignments of error assert the insufficiency of the evidence to sustain the verdict or support the judgment, and that the state was permitted, in rebuttal, over objection, to impeach appellant as a witness by testimony of his bad reputation for "truth, honesty, and integrity", without appellant having first offered evidence of good character.

The complainant, C. H. Ferguson, owns and resides on a tract of land in Gooding County, Idaho, on the north side of the Snake River in the vicinity of the Idaho Power Company's "Thousand Springs Power Plant". The latter part of October, 1944, he took eight head of calves and put them on a 75-acre tract of pasture land he owned in Twin Falls County, Idaho, almost directly across the river from where he lived. It is for the alleged larceny of one of the eight calves that appellant was prosecuted and convicted. The appellant at the time of the trial lived in Gooding County, Idaho, five miles south and one mile east of Wen-

dell. From October 1, 1944, to February 22, 1945, he lived on the Bill Robinson ranch northwest of Buhl and about five miles southwest of complainant's pasture land. Prior to moving onto the Robinson place he had lived in the vicinity of Wendell, Idaho. In October, 1943, he was divorced from his present wife and they were remarried in June, 1944. Mrs. Branch had three children by a former marriage, including Aloha Belle Hine, eleven years old at the time of the trial. At the time of the divorce she owned several cows. Subsequent to the divorce and prior to the remarriage Mrs. Branch lived at and kept her cows on the Jacobson place several miles south of Wendell. While there, Guy Metcalf, in the spring of 1944, tried to buy a heifer calf from Mrs. Branch because "it was out of an awfully good cow", which he milked, and "looked like it would make a very good cow". During the spring of 1944 Mrs. Branch's cows were leased to a man named Arthur Koch, who lived four and one-half miles west of Wendell and about one-half mile from appellant's place. Her cattle, other than the cows that were leased to Koch, were pastured with defendant's cattle in the vicinity of the Koch place. About September 21, 1944, twenty-one head of said cattle, including the calf in question, were taken to A. L. Mullin's place on the south side of the Snake River and up stream some two or three miles from the 75-acre tract belonging to complainant. A few days later some four head more were taken to the Mullins place. The mother of the calf in question was among the cattle taken to the Mullins place and because Mullins was asked to milk the cow some discussion arose as to the calf. Appellant had rented the Mullins pasture and the cattle remained there until about December 19th. After they left the Mullins place they were taken to the Banbury ranch about a mile and one-half from the Mullins place, where they remained until about the middle of January, at which time they were taken to the Ring ranch, where appellant had bought some hay. About February 8, 1945, said cattle were removed to the Robinson place. At all times when the cattle were being moved from one place to another Aloha Belle Hine accompanied the appellant and assisted in moving said cattle.

After complainant placed his eight head of calves on the 75-acre tract he carried feed to them from time to time. The fence was down in places and the calves often left the premises, grazed along the highway and were bothersome

to some of the ranchers in that vicinity. There is some dispute as to the time when complainant last saw said calves. There is some testimony to the effect that it was February 4, 1945, and other testimony, given by complainant at the preliminary examination and used for impeachment purposes, that it was February 21st. The record discloses that along about the 24th or 26th of February, 1945, complainant was looking for said calves and making inquiry from people living in the vicinity of the 75-acre tract as to their whereabouts. The record likewise discloses that at the time of the trial none of the eight head of calves had been found by complainant. February 21, 1945, about nine o'clock in the morning, the twenty-eight head of cattle, including the calf in question, were trucked to the Twin Falls Commission Company to be sold, and by said commission company shortly thereafter the calf in question was sold to a man named Stafford. About February 23rd the appellant and his family moved back to his place west of Wendell and on February 27th complainant called on appellant and inquired of him incident to the sale of the cattle. About that time complainant visited the Stafford place and the calf in question was examined as to markings. Complainant returned to see appellant on March 3rd. During the trial a great deal of testimony was adduced relative to the use of a "hog snouter", claimed by complainant to have been used in earmarking said calf. The hog snouter is State's Exhibit "A". I am forced to the conclusion that it appears to be more efficient and formidable when made the subject of discussion than it does when actually examined. It is not claimed by complainant that he has a recorded earmarking. There is likewise testimony that the markings or cuts on the right ear of the calf in question were the result of injuries and tears inflicted by dogs. The testimony on behalf of appellant that the calf in question was not the property of Mr. Ferguson is positive and uncontradicted, and begins with the time in the spring of 1944 when Mr. Metcalf tried to purchase the calf from Mrs. Branch and stated that he saw the calf on many, many occasions. Aloha Belle taught said calf how to drink milk during the weaning processes and saw it almost daily from the time it was born until trucked to the commission company. She assisted in removing it from the time it left the Jacobson place until it was brought to the Robinson place. When the calf was brought to the Mullins place

its mother and the calf were pointed out to Mr. Mullins and it remained on his premises for approximately three months. The testimony shows that he repeatedly drove it away from his haystacks and used his dogs in that connection. The calf was brought to the Mullins place before complainant placed his eight head on the 75-acre tract and for that reason there appears to be no chance for Mr. Mullins to have been mistaken as to said calf. Appellant likewise positively identifies the calf as being the property of his wife. Mrs. Branch did not attend the trial as the record shows she was in a hospital at Wendell. All of these witnesses went and examined said calf on occasions after it was taken to the Stafford place, and traced it from birth on Jacobson's place. The proof as to the identity of the animal on the part of the State is limited to the testimony of Mr. and Mrs. Ferguson, and Mr. Ferguson's testimony is so uncertain and contradictory that it is hard to believe as against the positive testimony in behalf of appellant.

In rebuttal the State introduced three witnesses in an attempt to impeach defendant as a witness by testimony of bad reputation for "truth, honesty, and integrity". Appellant had offered no evidence of good character. The question propounded to said witnesses was as follows: "Q. Do you know the reputation of the defendant E. A. Branch for truth, honesty and integrity in the community in which he resides?" The answers were in the affirmative. They were then asked: "Q. What is that reputation for truth, honesty and integrity—good or bad?" Attorney for appellant objected on the grounds that it was incompetent, irrelevant and immaterial. The objection was overruled and said witnesses testified appellant's reputation for truth, honesty and integrity was bad.

■ On the question of the right of the state to impeach a defendant in a criminal action, or the extent to which the inquiry may go, the authorities seem to be in conflict, and it seemingly depends on statutory provisions. At common law the defendant in a criminal action was incapable of testifying in his own behalf. Fear of punishment, whether conscious of guilt or innocence, it was assumed, would cause him to testify untruthfully, and to avoid such his testimony was wholly excluded. At the present time, in most states, the defendant may, as a mat-

ter of statutory provision, if he so elects, testify in his own behalf. Such statutes are derogatory of the common law and should receive strict construction, but not such as will nullify the legislative intent, nor deprive the defendant of his rights. (Underhill on Criminal Evidence, 3rd Ed., p. 121, Sec. 110; *State v. Motley* (Ore.), 272 P. 561; *State v. Ede* (Ore.), 117 P. (2d) 235). It is usually provided by statute that the defendant, when testifying in his own behalf, may be examined and cross-examined "as any other witness", and if such is the case he will not be permitted to claim any privilege not enjoyed by other witnesses. (Underhill on Criminal Evidence, 3rd Ed., page 129, sec. 114; *State v. Bowers*, 108 Kan. 161, 194 P. 650; *State v. King*, 67 Wash. 651, 122 P. 323).

Abbott's Criminal Trial Brief, 3rd Ed., page 502, collects the statutory provisions of all the states relative to the "accused as a witness". A review thereof discloses the dissimilarity incident to various jurisdictions. The provisions of some such statutes are here shown:

Arizona: "* * * but if he offers himself as a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness."

California: "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offer himself as a witness he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief."

Georgia: "In all criminal trials the prisoner shall have the right to make to the court and jury such statement in the case as he (or she) may deem proper in his (or her) defense. It shall not be under oath, and shall have such force as the jury may think right to give it. They may believe it (such statement) in preference to the sworn testimony in the case. The prisoner shall not be compelled to answer any questions on cross-examination should he think proper to decline to answer."

Montana: "A defendant in a criminal action or proceeding * * * may testify in his own behalf; and the jury, in judging of his credibility * * * may take into consideration the fact that he is the defendant, and the nature and enormity of the crime of which he is accused."

Nevada: "In the trial of all indictments, * * * the person so charged, at his own request, but not otherwise, is deemed a competent witness; the credit to be given to his testimony being left solely to the jury, under the instructions of the court. * * * and in all cases wherein the defendant to a criminal action declines to testify the court shall specially instruct the jury that no inference of guilt shall be drawn against him for that cause."

New York: "The defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify does not create any presumption against him."

Oregon: "* * * the person so charged or accused shall, at his own request, but not otherwise, be deemed a competent witness, * * * when offering his testimony as a witness in his own behalf, shall be deemed to have given to the prosecution a right to cross-examination upon all facts to which he has testified, tending to his conviction or acquittal."

Utah: " 'If a defendant offers himself as a witness, he may be cross-examined by the counsel for the state the same as any other witness. His neglect or refusal to be a witness shall not in any manner prejudice him, nor be used against him on the trial of the proceeding.' Comp. Laws 1917, Sec. 9217. The accused shall not be compelled to give evidence against himself. Sec. 8555."

Vermont: "* * * the person so charged shall, at his own request, and not otherwise, be deemed a competent witness, the credit to be given to his testimony being left solely to the jury, under the instructions of the court; but the refusal of such person to testify shall not be considered by the jury as evidence against him."

Washington: "Any person accused of crime in this state, * * * may, * * * offer himself or herself as a witness * * * and when accused shall so testify, he or she shall be subject to all the rules of law relating to cross-examination of other witnesses; * * *."

Wyoming: "If the defendant so elect, he may make a statement to the jury without being sworn, but the neglect or refusal to make such a statement shall not create any presumption against him, * * *."

Section 19-2903, Idaho Code Annotated (formerly Section 8143, Revised Statutes 1887, Criminal Practice Act 1864), relative to the accused as a witness, and in comparison with the foregoing states on the same subject, is as follows:

"A defendant in a criminal action or proceeding to which he is a party, is not, without his consent, a competent witness for or against himself. His neglect or refusal to give such consent shall not in any manner prejudice him or be used against him on the trial or proceeding."

It will be noted that the Idaho statute (19-2903) is absolutely silent as to the method and manner of the examination and cross-examination of a defendant when he becomes a witness in his own behalf, and, likewise, as to the matter of his impeachment.

In the case of *State v. Larkins*, 5 Ida. 212, 47 P. 855, the question as to the extent to which cross-examination of a defendant might extend, on rehearing, modified the original opinion, and held:

"Under this rule, the defendant in a criminal action, who has testified in his own behalf, can only be cross-examined by the state as to the facts stated on his direct examination, or connected therewith."

Article I, Section 13, Idaho Constitution, provides: "In all criminal prosecutions, * * * no person shall be twice put in jeopardy for the same offense; * * * nor be compelled in any criminal case to be a witness against himself; * * *."

The recent case of *State v. Williams* (Mo.), 87 S.W. (2d) 175, discards rules existing since 1850, to the effect that a witness may be discredited by character testimony showing a bad reputation for morality, as well as for truth and veracity, and wherein it is said:

"We therefore hold that *State v. Clinton*, supra, and *State v. Scott*, supra, and all the cases herein mentioned following the morality rule should no longer be followed." The modified rule was adopted, and the case reversed because the trial court permitted six witnesses to testify in rebuttal, over objections, and without the defendant having

put her character in issue, that her general reputation for morality was bad. An array of authorities are cited showing the rules in various jurisdictions relative to impeachment of witnesses. The decision cites the states where the rule followed is governed by statute, and the states are grouped according to the statutory provision. California, Idaho and Utah are grouped together in that their statutes limit the inquiry to the general reputation of the witness for truth, honesty or integrity.

The provision in Idaho, above referred to, is Section 16-1209, Idaho Code Annotated, likewise adopted from Revised Statutes 1887, Sec. 6082, Laws 1864, and is as follows:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

The statute of California is the same as Idaho's, and that of Utah is very similar. The foregoing statute has to do with witnesses. It is not applicable to a defendant in a criminal action in this jurisdiction, for the very obvious reason that there is no statutory provision here, as in other jurisdictions, providing that a defendant, when he testifies in his own behalf, becomes "as any other witness" and is governed by the same rules of evidence.

The impeaching question asked appellant embodied three propositions: First, that it was not in the form of the statute, in that it did not inquire as to appellant's *general* reputation; Second, that it was sought to impeach appellant's reputation for honesty and integrity, which are moral traits of character and are only remotely, if at all, connected with or indicative of his reputation for truth and veracity; Third, that because there is no statutory provision in this state permitting the impeachment of a defendant in a criminal case on any of the aforementioned traits of character until he has first put his reputation therefor in issue.

We think the case of *Boeck v. Boeck*, 29 Ida. 639,

161 P. 576, is controlling as to the first proposition, wherein, after quoting the statute, it is said:

"In the questions propounded to the witness, Mrs. Krider, the *general* reputation of Hazel Boeck for truth, honesty or integrity was not called for, nor was it stated in the answer thereto. The right to impeach a witness and the methods of impeachment are statutory, and if a witness is to be discredited in this manner the statute must be conformed to."

In the case of *State v. Marks* (Utah), 51 P. 1089, the defendant in an action for assault with a deadly weapon became a witness in her own behalf and neither she nor witnesses for her offered testimony to sustain her reputation for truth, honesty or integrity in the first instance. The prosecutor called two witnesses in rebuttal and they were asked: "Do you know her reputation in that community for truth, honesty, and integrity?" Objection was made and overruled. In passing upon the question, the court said:

"The word 'general' should always be used in propounding the question. * * * There is still another reason why the same question which embraced the reputation of the accused for truth, honesty, and integrity was improper. The general character of a defendant cannot be put in issue unless it is voluntarily placed in issue by the accused. When the accused testifies concerning the matter complained of, or offers evidence of his good character for truth, then the question of his truthfulness and credibility as a witness is placed in issue, and his general reputation for truth and veracity could be shown, as affecting his credibility and truthfulness as a witness; but his character for honesty and integrity, not being in issue, cannot be attacked or placed in issue by the prosecution by proof of his general reputation concerning his character for honesty and integrity."

In the case of *Tarling v. People* (Colo.), 194 P. 939 it is said:

"While the authorities are not in entire accord upon the question, the better rule seems to be that in impeaching a witness the inquiry ought to be as to his credibility, his reputation for truth and veracity, rather than as to his

moral character. The great weight of authority supports this rule.

"The contrary view is based upon the theory of the kindred nature of vices. This involves the necessity for sanctioning the drawing of an inference from an inference. A witness having been shown to be dishonest or immoral, it is inferred from that trait of character that he is untruthful; then upon the inference that he is untruthful generally it may be inferred that he is untruthful in the testimony which he has given. This violates the rule that an inference shall not be based upon an inference. It follows, therefore, that the impeachment shall go to his general character or reputation for veracity."

In *Fletcher v. State*, 49 Ind. 124, 19 Am. Rep. 673, it is said:

"Upon the trial of the cause below, the defendant offered no evidence of his general character but chose to rest upon the presumption which the law indulged in his favor. He went upon the stand as a witness, and testified in his own behalf. After he had closed his evidence, the State introduced a witness who, in answer to a question propounded to him, testified that he knew the general character of the appellant, and that it was bad.

"* * * The law invests every person accused of crime with a presumption in favor of good character, and the State cannot offer evidence to impeach such character until the accused has put his general character in issue by offering evidence in support of it. The presumption in favor of good character continues, and must be indulged, as long as the accused rests upon such presumption; but when he abandons the shield which the law has thrown around him, and attempts by affirmative evidence to prove, as a fact, that his general character is good, he opens the door for the admission of evidence on the part of the State to prove that his character is bad."

See, also *State v. Beale* (Ind.), 34 Am. Rep. 263; *State v. Werner, et al,* (La.), 80 South. 596; *Gordon v. U.S.,* 254 Fed. 53; *State v. Anderson* (La.), 65 South. 478; *Maloy v. State* (Fla.), 41 South. 791; *State v. Nelson* (Minn.), 181 N.W. 850; *Cox v. State* (Ala.), 50 South. 398; *Quinn v. State* (Ala.), 74 South. 743; *State v. Baird* (Mo.), 231 S.W.

625; *People v. Wansker* (N.Y.), 182 N.Y.S. 782; and *People v. Richardson* (N.Y.), 118 N.E. 514, wherein it is said:

"It is also an elementary rule that the general character of the defendant in a criminal trial may not be made an issue unless he chooses to make it so by resorting to affirmative proof of his good character. (Citing numerous authorities.)"

In the case of *Harris v. State* (Okla.), 262 P. 700, 701, it is said:

"It has been repeatedly held by this court that the character or reputation of the accused cannot be put in issue by offering testimony as to his bad character, unless the defendant first offers evidence as to his good character, then the prosecution may rebut it by evidence of bad character. If the law permitted the introduction of evidence as to the other crimes committed by the defendant, other than the one for which he is on trial, or would permit the state to offer testimony of his general bad character as original evidence against him, it would result in a confusion of the issues before the jury."

In *People v. Markham* (Cal.), 30 P. 620, it is said:

"At the trial a witness, Cole, was asked by defendant's counsel: 'Do you know Ah Hung's reputation for truth, honesty and integrity in San Jose?' Ah Hung had been examined as a witness on behalf of the prosecution. To the question above recited the witness Cole answered: 'I know his general reputation among the officers of San Jose; that is all.' On objection, the answer was ruled out by the court. * * * The question propounded to the witness was not as to the general reputation of Ah Hung, and the answer of the witness did not respond to any supposed question as to general reputation." (See, also, *People v. Cord* (Cal.), 108 P. 511.)

In *Smith v. State* (Ala.), 72 South. 316, it is said:

"When the accused has testified as a witness, the credibility of his testimony may be impeached * * * by showing his general bad character for truth and veracity to the time of the trial. * * * All such impeaching and sustaining

character evidence must be carefully limited by the trial court to the question of the credibility of the defendant as a witness. (*Rains v. State*, 88 Ala. 91, 7 South. 315; *Cox v. State*, 162 Ala. 66, 50 South 398; Wigmore, Ev., Secs. 890, 891; Greenl. Ev. 444b; *State v. Beal*, 68 Ind. 345, 34 Am. Rep. 263; *State v. Efler*, 85 N.C. 585; *Fisher v. Conway*, 21 Kan. 18, 30 Am. Rep. 419."

In the case of *Pressley v. State* (Okla.), 112 P. (2d) 809, 815, it is said:

" 'It is a fundamental principle of criminal law that the character of the defendant cannot be impeached or attacked by the state, unless he puts his character in issue by introducing evidence of good character. (*Kirk v. State*, 11 Okla. Cr. 203, 145 P. 307.' Citing *Jones v. State*, 20 Okla. Cr. 154, 201 P. 664.)" See, also, Underhill on Ev., Sec. 82; Wigmore on Ev., Sec. 223; *Porter v. State*, 8 Okla. Cr. 64, 126 P. 699; *Corliss v. State*, 12 Okla. Cr. 526, 159 P. 1015.

*People v. Hinksman*, 192 N.Y. 421, 85 N.E. 676, deals at length with the rights of an accused when a witness in his own behalf. New York's statute and ours (19-106) are similar. The court declined to follow the former cases of Burdick and Adams, insofar as they followed the doctrine that evidence of defendant's general bad reputation is competent simply because he is a witness in his own behalf. It is pointed out that the right of the accused to testify is governed by Section 393, Code of Criminal Procedure, and Mr. Underhill's statement that, "when the statute does not expressly provide that the accused may be examined or impeached the same as other witnesses, his general character is protected from attack, for our statute is silent upon that subject." The author quotes from 3rd Greenleaf on Evidence, Sec. 25, to-wit:

" 'But the prosecutor is not allowed to call witnesses to the general bad character of the prisoner, unless to rebut the evidence of his good character already adduced by the prisoner.' And he adds that even this has recently been denied in England." (See *Rex v. Turner*, 1944, King's Bench Division, p. 463, wherein the Criminal Evidence Act, 1898, S. I., proviso (f.) is discussed.) In commenting further the court held:

"We think that evidence of general bad character, which is nothing but evidence of general reputation, should not be considered competent to decide the issue whether a defendant who testified in his own behalf is worthy of belief, any more than evidence of reputation for untruthfulness should be directly decisive of his guilt or innocence. * * * We prefer to stand upon the rule, which we repeat in the language of Abbott: 'Whatever the crime charged the prosecution cannot give evidence of bad character of the accused unless the accused has first adduced evidence of good character as tending to support the presumption of innocence.'" (See *People v. Lingley* (N.Y.), 101 N.E. 170.)

The proof of identity of the calf alleged to have been stolen, or that it was the personal property of complainant, is very slight. The authorities herein cited are conclusive on the questions involving impeachment of appellant. Not only was it error to allow the question propounded because it did not conform to statutory requirement, but it was likewise error to permit the inquiry, at all, until such time as the defendant has first placed his reputation in issue. Permitting such proof may have been highly prejudicial, and without which a different verdict might have been returned. Accordingly, the judgment is reversed and the cause remanded with directions to grant a new trial.

Ailshie, C.J., and Holden, J., concur.

GIVENS, J., dissenting.—Appellant took the witness stand in his own behalf and gave extensive exculpatory testimony. Thereafter in rebuttal, the state produced several witnesses who testified appellant's reputation for truth, honesty and integrity in the community where he resided was bad. While appellant's assignment seems to limit the asserted error to admission of evidence of appellant's bad general reputation, as distinguished from veracity, prior to his proffer to establish his good character, his ultimate contention appears to exclude *any* adverse character evidence as to veracity or otherwise and such apparently is the majority holding.

This position utterly fails to distinguish between impeaching the defendant in a criminal case as a witness, and as a defendant where he does not take the witness stand.

The latter situation is not before us and the authorities relative thereto are, therefore, not in point.

*State v. Williams* (Mo.), 87 S.W. (2d) 175, is relied upon to sustain the proposition that Section 16-1209, I.C.A. does not authorize the character impeachment of a defendant-witness in a criminal case on the ground that we have no statute making said section of the statute applicable.

In the first place *State v. Williams,* supra, holds and has been construed by later cases in Missouri as holding that a defendant in a criminal case who testifies may be impeached as to his reputation for truth and veracity.

"* * * In the *Scott Case,* supra, 332 Mo. 255, loc. cit. 266, 58 S.W. (2d) 275, loc. cit. 280, 90 A.L.R. 860, 869, the writer expressed the opinion that the reputation of the witness for honesty also might be shown, on the theory that honesty is simply trustworthiness in both word and deed. And it is a fact that one cannot have a good reputation for honesty if he stands in bad repute for truth and veracity; but there are cases indicating a view that a man may bear a bad reputation for honesty, although not considered untruthful, as where he fails to pay his debts, or is a sharp trader, and the like. (70 C.J., Section 1069, p. 858.) And so, to avoid ambiguity and injustice to the defendant as far as possible, it seems better that the impeaching testimony should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity." (*State v. Williams,* supra at 182.)

In other words, *State v. Williams,* supra, held that a defendant as a witness in a criminal case could not be impeached for immorality but could as to his truth and veracity.

"* * * The character of the accused may become involved in two aspects. If he testifies, he may be impeached for truth and veracity the same as other witnesses. See *State v. Williams,* and cases cited supra. * * *" *State v. Robinson* (Mo.), 130 S.W. (2d) 530 at 531.

"Appellant assigned error because the trial court permitted the state to introduce evidence which tended to impeach him for truth and veracity. There is no merit in

this assignment since appellant testified in the case and was therefore subject to impeachment the same as any other witness. *State v. Scott,* 332 Mo. 255, 58 S.W. (2d) 275, 90 A.L.R. 860. * * *" *State v. Quinn,* 136 S.W. (2d) 985 at 987. *State v. Ferguson* (Mo.), 182 S.W. (2d) 38 at 42.

Therefore, whatever else the Missouri rule may be, the cases in that jurisdiction recognize and reiterate that the defendant as a witness in a criminal case may be impeached by showing that his reputation for truth and veracity is bad.

The questions propounded herein, except for the omission of the word "general", where in the language of our statute, which is truth, honesty or integrity, and *State v. Williams,* supra, indicated that Idaho authorizes impeachment as to the reputation of a defendant-witness in a criminal case for truth, honesty and integrity, stating:

"This view (that the defendant in a criminal case as a witness may be impeached as to truth and veracity) has the approval of commentators: 2 Wigmore on Evidence (2d Ed.), Section 922, p. 301; Jones on Evidence (3d Ed.), Sections 860, 861, pp. 1356, 1360; Greenleaf on Evidence (16th Ed.), Section 461a, p. 576. And such is the rule followed in the great majority of jurisdictions in the United States. As gathered from 70 C.J., Section 1039, p. 826, 2 Wigmore on Evidence (2d Ed.), Section 923, p. 304 et seq., and the 1934 Supplement thereto, p. 378, and some brief, hurried research of our own, it appears that in nine states (Arkansas, Georgia, Iowa, Indiana, Kentucky, Louisiana, Montana, New Mexico, Oregon) the rule is fixed by statutes permitting evidence as to the general moral character of the witness for the purpose of impeachment. In three states (California, Idaho, Utah) the statute limits the inquiry to the reputation of the witness for truth, honesty, and integrity. * * *"

In the second place, the statement in the majority opinion that our impeachment statute, Section 16-1209, supra, "is not applicable to a defendant in a criminal action in this jurisdiction, for the very obvious reason that there is no statutory provision here, as in other jurisdictions, providing that a defendant, when he testifies in his own

behalf, becomes 'as any other witness' and is governed by the same rules of evidence," obviously overlooks Section 19-2010, I.C.A.[1] The identical California statute, Kerr's Code, Section 1102, has been held to make their statute, Kerr's Code, Section 2051, identical with Section 16-1209, supra, applicable to and authorizing the impeachment of a defendant as a witness in a criminal case. (*People v. Hickman* (Cal.), 45 P. 175 at 176; *People v. Prather* (Cal.), 53 P. 259 at 261; *People v. White* (Cal.), 75 P. 828; *People v. Bastian* (Cal.), 272 P. 756 at 757.)

The only point before us for consideration is the proper rule where the defendant becomes a witness on his own behalf, and the authorities are practically uniform in holding under statutes similar to ours, that where a defendant in a criminal case becomes a witness in his own behalf, he may be impeached by showing that his reputation for truth, honesty and integrity is bad, the same as any other witness.

*People v. Hinksman* (N.Y.), 85 N.E. 676, cited as supporting the proposition that a defendant in a criminal case, even though a witness, cannot be impeached, holds to the contrary and clearly distinguishes the two situations,

"* * * Logically a defendant who voluntarily testifies in his own behalf occupies a dual position. He is at once a party and a witness, and is entitled to the rights and privileges of each. As a party he need not testify at all.

If he deem it prudent to remain silent, no presumption is to be indulged against him. If he prefers to testify, his general character is safe from attack until he puts it in issue by himself introducing evidence relating to it. But when he assumes the character of a witness he exposes himself to the legitimate attacks which may be made upon any witness. Other witnesses may be called to impeach his credibility by showing that his general reputation for veracity is bad, or he may upon cross-examination be interrogated as to any specific act or thing which may affect his character and tend to show that he is not worthy of belief. * * *" At page 679-680.

---

[1] "19-2010. *Rules of evidence.*—The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this code."

and such has been without deviation the subsequent interpretation of this case.

"* * * The position of a defendant is far different when he becomes a witness in his own behalf than when he does not and stands upon his right to refuse to testify. He is surrounded with safeguards, but by becoming a witness the defendant puts his credibility in issue, as does any other witness. * * * *People v. Tice,* 131 N.Y. 651, 30 N.E. 494, 15 L.R.A. 669; *People v. McCormick,* 135 N.Y. 663, 664, 32 N.E. 26; *People v. Webster,* 139 N.Y. 73, 84, 34 N.E. 730; *People v. DeGarmo,* 179 N.Y. 130, 134, 71 N.E. 736; *People v. Hinksman,* 192 N.Y. 421, 432, 433, 85 N.E. 676; *People v. Rosenheimer,* 209 N.Y. 115, 123, 102 N.E. 530, 46 L.R.A. (N.S.) 977, Ann. Cas. 1915A, 161; *People v. Richardson,* 222 N.Y. 103, 107, 118 N.E. 514; Wigmore on Evid. Sections 61, 889, 890, 2207." *People v. Johnston* (N.Y.), 127 N.E. 186 at 188.

"In the case of *People v. Hinksman,* 192 N.Y. 421, 85 N.E. 676, 679, the Court of Appeals of New York commenting upon the same question said: 'Logically a defendant who voluntarily testifies in his own behalf occupies a dual position. He is at once a party and a witness and is entitled to the rights and privileges of each. As a party he need not testify at all. If he deems it prudent to remain silent, no presumption is to be indulged against him. If he prefers to testify, his general character is safe from attack until he puts it in issue by himself introducing evidence relating to it. But when he assumes the character of a witness he exposes himself to the legitimate attacks which may be made upon any witness. Other witnesses may be called to impeach his credibility by showing that his general reputation for veracity is bad, or he may upon cross-examination be interrogated as to any specific act or thing which may affect his character and tend to show that he is not worthy of belief.'

"Many cases may be cited from other states that approve the same doctrine, among which are *State v. Beal,* 68 Ind. 345, 34 Am. Rep. 263; *State v. Anderson,* 135 La. 326, 65 So. 478; *State v. Dyer,* 139 Mo. 199, 40 S.W. 768; *Paxton v. State,* 108 Ark. 316, 157 S.W. 396.

"The general rule is stated in 28 Ruling Case Law 620, as follows: 'Generally speaking, a defendant in a crim-

inal case testifying in his own behalf may be contradicted, impeached and sustained in the same manner as other witnesses. His character for truth may be impeached, and the same is true in some jurisdictions as to his general character.'

"An examination of the authorities leads to the conclusion that while the defendant in a criminal case may be protected from attack as to his general character unless he first puts in issue his reputation for good character, yet when he testifies as a witness his reputation for truth and veracity is always an issue and therefore subject to attack independent of any attempt on his part to support the same." *Hamilton v. State* (Ohio), 177 N.E. 221 at 222.

"The defendant testified in his own behalf, going fully into the facts constituting his defense. To impeach his testimony, the state called several witnesses, who testified that his general reputation for truth, honesty, and integrity in the neighborhood where he lived was bad. Objection was made that such evidence was incompetent, inasmuch as the defendant had not himself put his character in issue. The objection was overruled. The defendant having testified to matters material to his defense, it was competent for the state to impeach his testimony. When a defendant is sworn, and testifies in his own behalf, he is subject to the same rules of cross-examination and impeachment as any other witness. Code Civ. Proc., Section 3379[2]; Pen. Code, Section 2078[3]. See, also *Mitchell v. State*, 94 Ala. 68, 10 South. 518; *People v. Beck*, 58 Cal. 212; *Drew v. State*, 124 Ind. 9, 23 N.E. 1098; *State v. Rainsbarger*, 79 Iowa 745, 45 N.W. 302; *State v. Day*, 100 Mo. 242, 12 S.W. 365; *State v. Broderick*, 61 Vt. 421, 17 A. 716. The objection was properly overruled." *State v. Schnepel* (Mont.), 59 P. 927, 928.

"* * * The defendant, having become a witness in his

[2]"3379. "A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony."

[3]"2078. The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this Code."

own behalf, was subject to the same rules of cross-examination and impeachment as any other witness. *State v. Schnepel*, 23 Mont. 523, 59 P. 927; *State v. Crowe*, 39 Mont. 174, 102 P. 579, 18 Ann. Cas. 643. Section 11977, Revised Codes of 1921, declares:

" 'The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this code.'

"The Code does not make any exception to the rule which governs the impeachment of a witness in a civil action. That rule is declared in section 10668, Revised Codes, as follows:

" 'A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony.'

"For the purpose of impeachment, the question asked by the county attorney was proper." *State v. O'Neill* (Mont.), 248 P. 215 at 218, 219.

Appellant contends that because the word "general" was not incorporated in the question, his objection of "incompetent, irrelevant and immaterial" should have been sustained. There is nothing to indicate the appellant called the attention of the trial court to the omission of this word or that it was not understood to mean and comprehend the general reputation of the appellant in the community where he resided. Hence the question was not so imperfect as to justify holding it reversible error.

"A further objection is made in this connection. There were some six or seven impeaching witnesses in all put on by the prosecution. To all of them, except in two instances, the form of the questions calling for their knowledge was unobjectionable; the witnesses being asked, in the usual formula, if they knew 'the general reputation of the defendant for truth, honesty and integrity,' etc. In two instances, however, the word 'general' was, whether by inadvertence or otherwise, omitted in putting the question.

The objection interposed by defendant in each of the instances, including the two last, was the same as above stated, and no specific suggestion or objection as to the mere form of the question was in any instance made to the court or opposite counsel. Defendant now insists that in the two instances indicated his objection was clearly good, and should have been sustained. In the first place, while it is true that the inquiry is to be confined to the general reputation of the witness, it is not necessarily true that this object can only be accomplished by using in all instances one stereotyped form of question. As, for example, in the case before us, in each of the two instances where the term 'general' was omitted in putting the question, the whole manner of the inquiry and the character of the questions asked evinced as clearly to the witness on the stand and the jury that it was the general reputation of the impeached witness that was being sought as though that fact had been expressed in exact terms. This is all that is required. But, in the next place, if defendant wished to avail himself of the objection now made, he should have directed the attention of the judge by specifically calling his attention to the vice in the form of the question now complained of. He cannot be heard to urge or point out here for the first time an objection of any more specific character than that made in the court below. *People v. Bush,* 68 Cal. 629, 10 P. 169; *Howland v. Railway Co.* (Cal.), 42 P. 983; *People v. Frigerio,* 107 Cal. 151, 40 P. 107." *People v. Hickman,* supra at 176, 177.

Apparently the attempt is made in the majority opinion to distinguish between impeaching as to general reputation or character and for truth and veracity. Our legislature has, however, specifically enumerated the traits of character which may be inquired into as bearing on credibility, namely, "truth, honesty or integrity". Section 16-1209, supra. Hence, if the defendant in a criminal case as a witness can be impeached, and all the authorities hold he can, he is to be impeached in the statutory method and one or all of these three traits are the legitimate subject of inquiry.

California and other jurisdictions have uniformly held the defendant in a criminal case as a witness may be impeached by showing his reputation for truth, honesty and integrity is bad. (*People v. Fealy* (Cal.), 165 P. 1034;

*People v. Brannon* (Cal.), 209 P. 1029; *People v. Gordon* (Cal.), 273 P. 568; *State v. O'Donnell* (Ore.), 149 P. 536; *State v. Friedlander* (Wash.), 250 P. 453; *Short v. Commonwealth* (Ky.), 42 S.W. (2d) 696; *Pinn v. State* (Neb.), 186 N.W. 544; *State v. Howard* (Mo.), 23 S.W. (2d) 16; *State v. Thornhill* (La.), 178 So. 343; *Ivey v. State* (Fla.), 180 So. 368.)

No case is cited by appellant nor are there any in the majority opinion holding that under statutes similar to ours where the defendant takes the witness stand in his own behalf, he may not be impeached by showing his adverse general reputation for truth, honesty and integrity.

It was for the jury to determine whether the identity of the animal allegedly stolen by appellant had been established, and the evidence though conflicting was sufficient to justify the verdict.

Therefore, I dissent and the judgment of conviction should be affirmed as no prejudicial error appears in the record.

I am authorized to say that Budge, J., concurs in this dissent.