574 P.2d 533

The STATE of Idaho,
Plaintiff-Respondent,

v.

Francis PALMER, aka Michael Larson,
Defendant-Appellant.

No. 12351.

Supreme Court of Idaho.

Jan. 10, 1978.

Rehearing Denied Feb. 27, 1978.

William J. Tway of Tway & Rowe, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., David G. High, Asst. Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

Defendant-appellant Francis Palmer was convicted by a jury of burglarizing the Foodland Market in Meridian, Idaho and was sentenced to the custody of the State Board of Correction for an indeterminate time not to exceed 14 years.

Officers Calhoun and Scarborough of the Meridian Police Department were on routine patrol duty on February 8, 1976. At around 11 p. m., while driving past the Foodland Market in Meridian, Officer Scarborough observed an individual (whom Scarborough identified at trial as Francis Palmer, the defendant) standing in front of a safe in the store. The Officers left their car and Officer Calhoun went to the back of the store while Officer Scarborough watched the front door. Upon reaching the rear of the store, Calhoun noticed two people coming off of a step in the back of the building. When they began running in the other direction, he ordered them to halt and then fired at them when they were about 40 yards away. Palmer was found on the ground, shot through the abdomen. The police discovered a walkie-talkie and a satchel of tools in the field near where Palmer was found. No fingerprints were detected. He was arrested and charged with first degree burglary.

At trial Palmer testified that he was in the area looking for employment. Coming from his former employer's house, his car broke down some four miles from Foodland

and he was given a ride to a phone booth near the store. (The location of Palmer's car was corroborated by the testimony of the former employer, who towed it away.) There he noticed two people on the roof of the store and went out back to observe the burglary. He testified that the two men ran past him and then he was shot by the policeman.

Palmer took the stand in his own defense and testified that he had been previously convicted of a felony. No further mention was made of this fact until the prosecutor, in closing argument, said:

"* * * and I urge to you, Ladies and Gentlemen, that the theory of an ex-convict going to the back of a store at 11:00 o'clock at night to watch two other people pull a burglary is preposterous on its face * * *."

Although this statement was not objected to at trial, Palmer asserts the prosecutor's comments require reversal.

This case raises the issue of the proper use of a witness' criminal record. Especially sensitive is the situation where the witness is also the defendant.

"The sharpest and most prejudicial impact of the practice of impeachment by conviction * * * is upon one particular type of witness, namely, the accused in a criminal case who elects to take the stand. If the accused is forced to admit that he has a 'record' of past convictions, particularly if the convictions are for crimes similar to the one on trial, there is an obvious danger that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to the legitimate bearing of the past convictions on credibility." McCormick, Evidence § 43 (2d ed. 1972).

Because of this obvious danger, strict limits have been put on the use of prior convictions. As concerns the prior record of witnesses, I.R.C.P. 43(b)(6) governs:

"Rule 43(b)(6). Impeachment by adverse party.—A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of judgment, that he has been convicted of a felony."

"The theory behind such statutory authorization [I.C. § 9–1209, now I.R.C.P. 43(b)(6)] is evidently that a witness, if shown to have been a convicted felon, is probably unworthy of belief." *Fowler v. Uezzell*, 94 Idaho 951, 956, 500 P.2d 852, 857 (1972).

■ It is clear that a felony record can be used to impeach the credibility of a witness. However, as McCormick points out, a careful line must be drawn between impeaching a witness' credibility and using a prior conviction to imply that a criminal will commit another crime simply because he has committed a crime in the past. The number of cases before various Supreme Courts on this very issue attests to the sensitive nature of the use of prior convictions.

We have held that the use of prior felonies is for impeachment only and that any further use can constitute a prejudicial error. *State v. Shepherd*, 94 Idaho 227, 486 P.2d 82 (1971). In that case we held it was error for the trial court to allow questioning beyond asking if the defendant had ever been convicted of a felony. Specifically, it was held prejudicial for the prosecutor to continue questioning as to the nature of the felony.

Palmer contends that the prosecutor's use of his prior conviction was exactly what the *Shepherd* case condemns. He urges that the use here was to advance the proposition that an ex-convict would never be at the back of a store at 11:00 o'clock at night, whereas a person without a conviction might be. However, this is not the inference drawn from a view of the entire record.

The argument the prosecutor had been making immediately prior to the alleged improper statement concerned the evidence and Palmer's testimony. The entire theme of the argument was to question Palmer's story. This is congruous with the idea that in referring to Palmer's version of the facts as "the theory of an ex-convict," the prosecutor was properly using Palmer's felony record to question his credibility as a witness. This is the sort of reference I.R.C.P. 43(b)(6) allows.

Six sentences earlier the prosecutor asked of the jury: "Do you believe the defendant was just there watching a burglary? Do you believe the defendant just was curious * * * ?" He continued this attack on Palmer's testimony on through to the end of his closing argument. The jury is entitled to consider Palmer's testimony in light of his felony record. *State v. Haggard*, 94 Idaho 249, 252, 486 P.2d 260, 263 (1971). The prosecutor's remarks went to the credibility of his testimony. The specific allusion was to what Palmer *said* he was doing at the scene. We cannot say this was improper.

Further, the jury was instructed properly as to the correct purpose of a witness's felony record. Instruction No. 7 specifically read:

"The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you only for the purpose of determining the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness's credibility. It is one of the circumstances that you may take into consideration in weighing the testimony of such a witness."

The conviction is affirmed.

SHEPARD, C. J., and McFADDEN and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

Jurisprudence, criminal jurisprudence included, is a science. If that science is to be maintained and perpetuated, it is important that the Court be consistent with its own previously announced philosophy, absent some good reason for not doing so. Today's decision represents an unexplained departure from this Court's developing jurisprudence on the question of the admissibility of prior convictions for the purpose of impeaching a defendant in a criminal case. I respectfully dissent.

I.

The majority holds that in his closing remarks to the jury "the prosecutor was properly using Palmer's felony record to question his credibility as a witness." I am not convinced that this is a fair characterization of what happened. It is one thing for the prosecutor to remark in closing that the jury is at liberty to consider the defendant's previous felony conviction in judging the credibility of his testimony. It is quite another to tell the jury that the defendant's entire case theory is that of "an ex-convict." The latter, it seems to me, would go beyond the narrow strictures laid down by this Court in *State v. Shepherd, supra*, in interpreting what was then I.C. § 9–1209. My own reading of the prosecutor's closing remarks leads me to believe he was not so much aiming at the credibility of the defendant as he was "knocking" the entire case of an "ex-convict." I cannot bring myself to conclude beyond a reasonable doubt that the prosecutor's conduct was not in error or that such error was so harmless as not to have prejudiced the defendant's chances for a fair trial before this jury.

II.

The heart of my dissent, however, does not concern the majority's questionable characterization of whether the prosecutor brought himself within a recent court-made rule of evidence, but rather concerns the uncritical acceptance of that rule itself.

The statute allowing the impeachment of a criminal defendant's credibility by evidence of prior felony convictions had, prior to its repeal in 1975, been the target of frequent criticism by this Court. In *State v. Branch*, 66 Idaho 528, 164 P.2d 182 (1945),

848

the statute (which was then codified as I.C.A. § 16–1209) was held not to apply to criminal defendants at all. The Court traced the history of the statute and noted that it had evolved from a tradition whereby,

> At common law the defendant in a criminal action was incapable of testifying in his own behalf. Fear of punishment, whether conscious of guilt or innocence, it was assumed, would cause him to testify untruthfully, and to avoid such his testimony was wholly excluded. 66 Idaho at 533, 164 P.2d at 184.

In modern times, on the contrary, a defendant is recognized as having the right to testify in his own behalf. The common law suspicion of the testimony of a convicted felon survives in those statutes which provide that if a defendant elects to testify in his own behalf, he may be examined and cross-examined "as any other witness," i. e., including impeachment by use of his prior felony convictions. Such statutes, however, are strictly construed lest they act to "deprive the defendant of his rights." *Id.* at 534, 164 P.2d at 184.

The Court in *Branch* was called upon to construe the statutory language which permits the impeaching of a witness "by evidence that his general reputation for truth, honesty or integrity is bad." The Court, in words equally applicable to the context of impeaching a witness by use of prior felony convictions, questioned the logical underpinnings of the statutory provision as being

> . . . based upon the theory of the kindred nature of vices. This involves the necessity of sanctioning the drawing of an inference from an inference. A witness having been shown to be dishonest or immoral [or to have committed a felony], it is inferred from that trait of character that he is untruthful; then upon the inference that he is untruthful generally it may be inferred that he is untruthful in the testimony which he has given. *Id.* at 539, 164 P.2d at 186.

The best rule, therefore, would be one which did not permit the prosecution to put in evidence the defendant's general reputa-

tion for honesty and integrity unless the defendant himself chooses to open that door. The Court concluded that the impeachment provisions of I.C.A. § 16–1209 were

> . . . not applicable to a defendant in a criminal action in this jurisdiction, for the very obvious reason that there is no statutory provision here, as in other jurisdictions, providing that a defendant, when he testifies in his own behalf, becomes "as any other witness" and is governed by the same rules of evidence. *Id.* at 537, 164 P.2d at 186.

The holding in *State v. Branch, supra,* that criminal defendants were not to be impeached "as any other witness," was overruled in *State v. Owen,* 73 Idaho 394, 253 P.2d 203 (1953), on the grounds that evidentiary rules are intended to be "applicable alike in civil and criminal actions." 73 Idaho at 405, 253 P.2d at 209. That being so, the Court, by a narrow 3–2 majority, chose to return to the majority rule that when a defendant

> . . . voluntarily takes the witness stand he subjects himself to cross-examination and impeachment under the same rules and conditions as any other witness. *Id.*

The issue in *Owen* was whether or not a criminal defendant's credibility could be impeached by a showing of prior felony convictions and, if so, whether the prosecution is entitled to go still further and reveal the nature of the crimes for which the convictions were suffered. Justice Keeton, in dissent, renewed the *Branch* Court's attack on the logic of the impeachment statute:

> . . . it is well recognized [that] the commission of other crimes has no pertinent bearing on whether or not an accused is guilty or innocent of the particular offense being investigated. *Id.* at 427, 253 P.2d at 224.

Indeed, it is a well-known fact that the prosecutor's desire to reveal the details of a defendant's prior felony conviction has little or nothing to do with impeaching the defendant's credibility:

Every attorney, with even limited experience in criminal practice, knows that impeachment of an accused in a criminal case is not, in fact, the real purpose of the examination. It simply pictures the misconduct and villainy of the accused and prejudices the jury by injecting hate into the proceedings. *Id.*

Experienced criminal defense attorneys, faced with the necessity of allowing their clients to take the stand, have invariably chosen to beat the prosecutor to the draw and to lessen the damage which will arise from the prosecution's inevitable "injection [of] hate into the proceedings," by slipping the felony-conviction question and answer into the evidence at a time when the impact, hopefully, may be softened. Such was the technique employed by defense counsel here at Palmer's trial. The damage came back manifold, however, where the prosecuting attorney dropped his bomb almost as the jury was filing out to deliberate.

Justice Keeton's conclusion still seems unassailable to me, namely, that whatever probative value there might be in admitting evidence of the defendant's prior felony convictions is more than outweighed by the prejudicial impact it has upon the jury:

> Such an examination is highly prejudicial and is wholly collateral to the matter being investigated. Such impeachment, if permitted, must of necessity permit the jury to avoid or confuse the issues, and return a verdict based on general principles, or because of prior crimes, knavery and malicious conduct indulged in by the accused. *Id.* at 426, 253 P.2d at 223.

That the Court remained uncomfortable with the rule laid down in *Owen* is clear from the very strict limits placed upon the rule in later cases. In *State v. Bassett*, 86 Idaho 277, 385 P.2d 246 (1963), the Court upheld a trial court's striking of questions which went to such issues as probation, grants of immunity and the existence of pending charges against a criminal accomplice. The Court ruled that I.C. § 9–1209 permitted impeachment by use of a prior felony *conviction*, but not by use of a misdemeanor or of a mere arrest and charging of an offense. *See also, State v. Scott*, 72 Idaho 202, 239 P.2d 258 (1952); *State v. Alvord*, 46 Idaho 765, 271 P. 322 (1928). Similarly, in *State v. Barwick*, 94 Idaho 139, 483 P.2d 670 (1971), the Court narrowly construed I.C. § 9–1209 in such a way as to exclude a defendant's record of judgment and conviction of a prior felony when, subsequently, the judgment had been vacated and an order of *nolle prosequi* entered.

The impeachment statute came under more direct attack in the case of *State v. Dunn*, 91 Idaho 870, 434 P.2d 88 (1967), in a special concurrence penned by Justice Spear and joined in by one other member of the Court. The special concurrence voiced concern that,

> "A serious question of fundamental unfairness arises when an evidentiary rule may deter a defendant from testifying in his own behalf or if he does testify subjects him to evidence highly prejudicial on the issue of guilt though inadmissible for that purpose. [Footnote omitted.] The present rule permits this on the theory that it helps the jury determine whether or not to believe the defendant. . . . A jury cannot be expected to departmentalize such evidence.
>
> "Perhaps the evidence of a prior criminal record should be limited to a conviction which bears directly on credibility—perjury, for example," 91 Idaho 879, 434 P.2d 97, quoting from *Stevens v. United States*, 125 U.S.App.D.C. 239, 240, 370 F.2d 485, 486 (1966).

At the least, the special concurrence in *Dunn* advocated a rule which would prohibit the prosecution from probing into the number or nature of previous felonies. As far as credibility is concerned, such probing is surely unnecessary:

> The accused has been labeled indelibly in the minds of the jurors as a felon, and thus his testimony has been impeached. 91 Idaho at 878, 434 P.2d at 96.

Justice Spear concluded that, "if and when this question is properly raised on appeal sometime in the future, it deserves careful consideration by this court."

Such an occasion arose in *State v. Shepherd*, 94 Idaho 227, 486 P.2d 82 (1971). Here Justice Spear, now writing for the majority, overruled *State v. Owen, supra*, and returned to the rationale of *State v. Branch, supra*, and to the arguments voiced by Justice Keeton in the *Owen* dissent. Again the Court's reasoning was grounded on the twofold consideration that impeachment by use of prior felony convictions is far more prejudicial than it is probative of defendant's credibility, and that the threat of exposure to such impeachment will often force a defendant to remain silent rather than exercise his right to take the stand in his own defense.

> In spite of any instruction which a jury may be given, specifically limiting the consideration which the jury may or should give to evidence concerning an accused's prior criminal record, a defendant would be prejudiced in the jury's eyes for having committed those past crimes; and he well may be found guilty on the basis of this past record rather than on the evidence presented during the particular trial. Additionally, unless the scope of the inquiry into his past record is limited, a defendant may decide not to exercise his right to take the witness stand in his own defense because of his fear of resulting prejudice when the jury learns of the details of his prior criminal record. 94 Idaho at 229, 486 P.2d at 84.

The Court's cogent reasoning in the *Shepherd* case, has been concurred in by virtually every contemporary author who has had occasion to comment on this rule of evidence. *See*, Jones on Evidence § 26–20 (6th ed. Bard ed. 1972);[1] Weinstein's Evidence. Commentary on Rules of Evidence for the

United States Courts and Magistrates, § 609[03] (Weinstein and Berger 1976); Wigmore on Evidence § 926 (3d ed. 1940).

The holding of the Court in *Shepherd* was the narrow one that once a defendant admits having committed a prior felony, "the prosecution is prohibited from interrogating any further concerning the number or nature of such previous felony or felonies." 94 Idaho at 230, 486 P.2d at 85.[2] Such was as far as the Court felt it could go, given the statute then on the books. The Court noted, however, that a still more ideal rule was already in use in the District of Columbia. The Court of Appeals of the District of Columbia, stressing the fact that their statute, like ours, reads that "a witness *may* be impeached" by use of prior felony convictions, has applied a more stringent rule before such convictions are admissible in the case of a defendant in a criminal case.

> The rule provides that a defendant who has a criminal record may ask the court in the absence of the jury to weigh the probative value of the convictions as to his credibility against the degree of prejudice which the revelation of his past crimes would cause; and he may ask the court to consider whether it is more important for the jury to hear his story than to know about prior convictions in relation to his credibility. 94 Idaho at 230, 486 P.2d at 85.

*See, Luck v. United States*, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965). With some dismay, the *Shepherd* court concluded: "[W]e do not feel Idaho is ready for what might be deemed the more enlightened rule now extant in the District of Columbia." *Id.*

---

1. Jones comments:

   The Uniform Rules of Evidence, Rule 21, take a fresh and seemingly sound approach to this troublesome question. The rule would limit evidence of conviction to crimes involving dishonesty or false statement as impairing credibility. Furthermore, when *the accused* is a witness, no evidence of previous convictions would be admissible until the accused has offered evidence to support his credibility. The reasoning is that this takes away the fear of character smearing and serves as an

   inducement to the defendant to take the stand. (Emphasis added.) § 26.20, fn. 50.

2. The Court went on to state that if the defendant denies having committed a felony, then the prosecution is entitled to elicit the correct information either by cross-examination or by use of felony convictions in the record of the accused. The Court also made it clear that evidence of other crimes by the defendant *is* admissible when relevant to matters such as intent, motive, a common scheme or plan, etc.

The strictures of the Idaho statute continued to grate upon the Court in subsequent terms. In *Fowler v. Uezzell*, 94 Idaho 951, 500 P.2d 852 (1972), Justice Shepard, speaking for a unanimous Court, again questioned the logic of I.C. § 9–1209:

> The theory behind such statutory authorization is evidently that a witness, if shown to have been a convicted felon, is probably unworthy of belief. While *we entertain certain reservations as to the continued vitality of such a theory*, the privilege of inquiry is nevertheless accorded by the statute. (Emphasis added.) 94 Idaho at 956, 500 P.2d at 857.

The case law put forward by appellant in *Fowler* (a civil case) was distinguished as having been drawn from criminal cases:

> We will not dogmatically apply rationales and theories which may be obviously applicable in criminal cases to cases involving civil procedures. *Id.*

Finally, in *State v. Cliett*, 96 Idaho 646, 534 P.2d 476 (1975), the Court again applied I.C. § 9–1209, noting that "*Regardless of its wisdom*, Idaho's impeachment statute [has remained] unchanged since its original enactment as R.S. § 6082 in 1877." (Emphasis added.) 96 Idaho at 649, 534 P.2d at 479.

A close reading of the Idaho Supreme Court's decisions on this issue indicates that there has emerged over the years a clear philosophy intent on *neutralizing the fundamental unfairness* of I.C. § 9–1209. In *State v. Branch, supra*, the Court held that the impeachment statute did not apply to criminal defendants at all since Idaho had no law insisting that defendants be treated the same "as any other witness." In *State v. Owen, supra*, a divided Court reversed the *Branch* decision on the grounds that a majority of other jurisdictions followed a different rule. The carefully reasoned dissent of Justice Keeton went unanswered. On numerous occasions, the *Owen* holding was very narrowly construed and eventually it was expressly overruled in *State v. Shepherd, supra*, which permitted the use of prior felony convictions for impeachment purposes but which forbade the prosecutor to delve into the number or nature of such convictions once the defendant had admitted their existence. Even this minimal requirement of the impeachment statute was reluctantly applied and repeatedly questioned. *State v. Cliett, supra*, the final case under the old statute, was decided on February 25, 1975. Five weeks later, the legislature repealed I.C. § 9–1209 by the passage of ch. 242, 1975 Sess.Laws, effective March 31, 1975.

By a supreme twist of irony, the provisions of I.C. § 9–1209 are today said to live on, undiminished in their fundamental unfairness, by virtue of so-called *procedural* rules promulgated by the very Court which had so long kicked at the goad of a substantive legislative enactment. The statute is now gone. The Court should not hesitate to fulfill the promise implicit in its own earlier decisions.

The sole obstacle to a ruling consistent with our jurisprudence on this matter would seem to be I.R.C.P. 43(b)(6) which has re-stated the provisions of I.C. § 9–1209, the old impeachment statute. I would hold that such a rule of evidence simply does not belong in the Idaho Rules of Civil Procedure which purport to govern only *the procedures* which shall be followed in the courts of the State of Idaho. In holding that a prior felony conviction is admissible to impeach the credibility of a criminal defendant, the new rule embodies, as did the old statute, a *substantive* proposition of law, namely, that such past convictions constitute evidence material to a defendant's present credibility on the witness stand. They also embody the policy decision that the probative value of such evidence outweighs the potential prejudice to the accused including interference with his right to take the stand in his own defense. Such a matter of substantive policy must be left to the legislature. The same statute which empowers this Court to "prescribe, by general rules, for all the courts of Idaho . . . the practice and procedure in all actions and proceedings," denies this Court the power to "abridge, enlarge [or] modify the substantive rights of any litigant." I.C. § 1–213.

If, for the sake of argument, one were to recognize Rule 43(b)(6) as a *valid* enactment of this Court dealing only with "practice and procedure," then there is all the more reason to strike it down. As a rule of our own creation, there would no longer be any reason not to adopt a rule more in keeping with the recent opinions of this Court on this topic:

> . . . no procedure, no matter how time honored it may be, is immune from judicial scrutiny and consequent alteration if such procedure had the effect of denying an accused a fair and impartial trial. *State v. Johnson*, 86 Idaho 51, 62, 383 P.2d 326, 333 (1963).

I see no reason why Idaho is not now "ready for what might be deemed the more enlightened rule now extant in the District of Columbia." *State v. Shepherd, supra*, 94 Idaho at 230, 486 P.2d at 85. I would urge the Court to adopt such a rule pursuant to the Court's authority and "duty to adopt procedure designed to safeguard the rights of an accused to a fair and impartial trial. I.C. § 1–212; I.C. § 1–213; and I.C. § 1–1622." *State v. Johnson, supra*, 86 Idaho at 62, 383 P.2d at 332. I would reverse the conviction in the present case and remand for a new trial for the reasons stated in Part I. With regard to Part II, it should be made known that the Court has not rejected the views which are expressed therein. Indeed, no contention was advanced by the defendant in the trial court or on the appeal that Rule 43(b)(6) is a judicial intrusion into the legislative field, or that the rule should be modified in line with this Court's remarks in its earlier cases. Such being the case, there is reason for saying that the Court should not consider an argument or theory which has not been presented. My own view is obviously that the Court *can*, and should, where it was adherence to a Court procedural rule which here provoked the only conduct in the trial which is assigned as error in an otherwise fair trial. The Court is not to be faulted, however, for choosing to review the desirability of retaining, modifying or rescinding this rule in a later case where both parties, and perhaps amicus curiae as well, have been heard from.