400 P.2d 390

R. E. W. CONSTRUCTION COMPANY, Inc., a California corporation, and Richard E. White and Betty B. White, Plaintiffs,

v.

The DISTRICT COURT OF the THIRD JUDICIAL DISTRICT of the State of Idaho, and each and every District Judge thereof, both those duly elected and qualified and any other District Court of the Third Judicial District of the State of Idaho, Defendants.

No. 9482.

Supreme Court of Idaho.

March 26, 1965.

428

Vernon K. Smith, Boise, for plaintiffs.

Allan G. Shepard, Atty. Gen., Richard Weston, Asst. Atty. Gen., and Moffatt,

Thomas, Barrett & Blanton, Boise, for defendants.

McFADDEN, Justice.

This proceeding arises out of litigation commenced by the plaintiffs herein in the District Court of the Third Judicial District against certain individuals and corporations, doing business under the name and style of Mountain Home Contractors. The district court action is based on an alleged breach of contract for which the plaintiffs seek recovery of damages; the action also sought to restrain the sale of certain real property in trust. Certain of the defendants in the lower court answered the complaint, and interposed a cross-claim.

After numerous motions, notices and other procedural steps taken by the respective parties, the defendants by notice took the depositions of the individual plaintiffs, and demanded production of certain books

of account, receipts, vouchers and other records and correspondence involved with the building project, which was the subject of the contract in litigation. At the time of the taking of the deposition, the plaintiffs failed to produce the demanded documents, and the defendants thereupon moved for an order to compel the plaintiffs to present such documents.

On the authority of I.R.C.P. 34, the trial court granted defendants' motion in part.

In the proceedings before this court, the plaintiffs seek to prohibit the defendant district judges from proceeding further with the order to produce entered in the lower court action, and to require the defendant district judges to set the cause for trial in the lower court before a jury.

The record in the district court shows: plaintiffs filed their complaint on February 1, 1962; Mountain Home Contractors filed answer and cross-claim April 4, 1962; plaintiffs filed answer to the cross-claim May 29, 1962; and on August 28, 1962, for the first time plaintiffs demanded a jury trial. Plaintiffs, on September 14, 1962, filed their first "notice of issue", wherein they stated they had demanded a jury trial, and subsequently on July 8, 1963 and January 23, 1964, filed "notices of issues", requesting trial by jury.

Plaintiffs in their petition aver that their constitutional rights are being denied because of certain allegedly illegally promulgated rules of civil procedure, particularly referring to the Idaho Rules of Civil Procedure Nos. 26(a) through 26(e) relating to discovery, Rule 34 relating to the copying of documents, Rule 16 relating to pretrial conference procedure, and Rule 38(a) through Rule 38(d) and Rule 39(a) through 39(b) relating to the denial of trial by jury. Plaintiffs further assert that Chapter 90 of 1941 Session Laws (I.C. §§ 1–212, 1–215 incl.), is a delegation of legislative power contrary to Idaho Const. Art. 5, Sec. 13. They also claim that there is a deprivation of their rights to trial by jury as guaranteed by Idaho Const. Art. 1, Sec. 7, by reason of the provisions of the Idaho Rules of Civil Procedure. They further assert prejudice by reason of delay in the proceedings, excessive costs and expenses that must be incurred, and the inconvenience and expenses involved by reason of having to travel from California to Idaho.

Defendants herein moved to quash the writs, and the cause is before this court on the questions of law involved.

Plaintiffs seek to place basic and fundamental concepts concerning the relationship between the legislative power and the judicial power of the state government in issue by these proceedings.

The first of these issues is the authority of this court to adopt the Idaho Rules of Civil Procedure, which the plaintiffs herein have so pointedly and generally attacked.

In 1941 the twenty-sixth session of the legislature enacted Chapter 90, as follows:

"Section 1 (I.C. § 1–212). That the inherent power of the Supreme Court to make rules governing procedure in all the Courts of Idaho is hereby recognized and confirmed.

"Sec. 2 (I.C. § 1–213). That the Supreme Court shall prescribe, by general rules, for all the Courts of Idaho, the forms of process, writs, pleadings and motions, the manner of service, time for appearance, and the practice and procedure in all actions and proceedings. Said rules shall neither abridge, enlarge nor modify the substantive rights of any litigant.

"Sec. 3 (I.C. § 1–214). The Supreme Court is hereby authorized to appoint from among the district judges of Idaho and the members of the organized Bar of Idaho such persons as it deems advisable to assist it in the formulation of such rules.

"Sec. 4 (I.C. § 1–215). Such rules, when adopted by the said Supreme Court shall take effect six months after their promulgation and thereafter all laws in conflict therewith shall be of no further force or effect."

The Idaho Rules of Civil Procedure were adopted by order of this court of November 1, 1957. By a subsequent order the effective date of the rules was fixed as November 1, 1958. (Bk. 21 Supreme Court Records, pp. 135, 233.)

Plaintiffs contend that there is no inherent power of this court to promulgate rules of practice and procedure for lower courts, and further that the legislature was without power or authority to enact Chapter 90, S.L.1941. The fundamental argument by the plaintiffs in this particular is that Idaho Const. Art. 5, § 13, (as it was in effect at the time of enactment of Chapter 90, S.L.1941, and the Idaho Rules of Civil Procedure,) wholly consigned the rule making power to the legislature. Idaho Const. Art. 5, § 13, as it existed at the time involved herein, provided:

"The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution."

Idaho Const. Art. 2, § 1, provides:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collec-

tion of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Plaintiffs contend that such provision of the Constitution prohibits the delegation of the legislative function of adoption of rules of procedure, to another department of government, and renders Ch. 90, S.L.1941 unconstitutional. State v. Nelson, 36 Idaho 713, 213 P. 358; 1 Cooley's Const. Limitation 8th Ed. p. 224.

Defendants herein have cited cases to the effect that the authority to adopt rules of practice and procedure for the courts is not solely a legislative function, but that it is, at least, a judicial function,—one that is inherent in the court structure. Illustrative of such authorities is the case of State ex rel. Foster-Wyman Lumber Co. v. Superior Court (1928) 148 Wash. 1, 267 P. 770, wherein the Supreme Court of Washington stated:

"The point here in controversy can be decided upon a far more stable foundation. Assuming the right of the Legislature to make rules for the court, and acknowledging its continued action in that respect, it does not follow that such action is a legislative function. Not all acts performed by a Legislature are strictly legislative in character. A failure to recognize this distinction often gives rise to the belief that one of our lawmaking bodies has abdicated its duty, and attempted to transfer its legislative mantle to the shoulders of another body, not legislative, thereby subverting the purpose of its creation and denying the people of the commonwealth the right to have the laws which govern them enacted by their duly chosen representatives.
* * *

" * * *

"We think it follows that the Legislature, although formerly functioning in this state as the source of rules of practice and procedure in the courts, did not, in so doing, perform an act exclusively legislative, and may, if it so desires, transfer that power to the courts without such act being a delegation of legislative power."

In State v. Roy (1936) 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1, the Supreme Court of New Mexico, in considering a statutory enactment similar to Idaho S.L.1941, Ch. 90, stated:

"When the legislature enacted chapter 84, it merely withdrew from a field wherein it had theretofore functioned as a co-ordinate branch of our government with the court in the promulgation of rules of pleading, practice, and procedure. Whether the legislative

branch of the government was ever rightfully in the rule-making field, or was a mere trespasser or usurper, need not now be determined. Chapter 84 is not a delegation of power. It is a mere abdication or withdrawal from the rule-making field. It is in effect a relinquishment of the rule-making field to the court. The Legislature, in effect, said to the court: 'You make the rules hereafter.'

" * * *

"Being satisfied as we are that chapter 84 is not a grant of power, there is nothing violative of fundamental law or the Constitution in this, the highest judicial body in the state, to prescribe rules for an inferior judicial body."

In Burney v. Lee (1942), 59 Ariz. 360, 129 P.2d 308, the Supreme Court of Arizona stated:

" * * *

"But regardless of whether the making of rules of procedure is strictly judicial or legislative in its nature, it is necessarily auxiliary to and only useful for the proper carrying out of the legitimate power of the judicial department. Just how far the rule-making power lies exclusively within the control of the courts, and just how far the legislative authority may interfere therein, it is not necessary for us to decide in this case, and we expressly reserve that matter for consideration if the necessity does later arise. The legislature, so far as it has the power to do so, has now left that matter exclusively to the supreme court by chapter 8 of the Session Laws of 1939, * * *.

"[5] We hold, therefore, that chapter 8, supra, was not unconstitutional as an unauthorized delegation of legislative power, but was merely a withdrawal by the legislature from the field in which it had at most merely concurrent power with the courts."

See also: State ex rel. Conway v. Superior Court, Etc. (1942) 60 Ariz. 69, 131 P.2d 983.

In Ernst v. Lamb (1923) 73 Colo. 132, 213 P. 994, it is stated:

"This court has always been of the opinion, we believe unanimously so, that the act of 1913 [The Supreme Court shall prescribe rules of practice and procedure in all courts of record and may change or rescind the same. Such rules shall supersede any statute in conflict therewith,] was not a delegation of legislative authority. The regulation of its own practice and procedure has always been a matter for the court except so far as the Legislature has interfered. See 15 C.J. 901. The act of 1913 restored that power which other Legislatures had partially taken away and gave the added power to make rules for lower courts, just

as other states have done, and as Congress gave the United States Supreme Court power to make rules in equity. 15 C.J. 904."

In Kolkman v. People (1931) 89 Colo. 8, 300 P. 575, 584, considering the question of whether rule making power is legislative or judicial, the Supreme Court of Colorado, said:

"* * * We are not called upon to determine what right and power the legislative department possesses, with reference to procedure in acquiring jurisdiction of the person or subject-matter, but the question with which we are concerned is the right, irrespective of the statutes and the common law, but in conformity with constitutional provisions, to make rules with reference to procedural matters for the conduct of trials. This is inherent in the judicial department. See 12 C.J. 1103; 6 R.C.L. 294; 1 Cooley's Constitutional Limitations (8th Ed.) 541–554; 23 Illinois Law Review, 276; Journal American Judicature Society, December 1929; State [ex rel. Foster-Wyman Lumber Co.] v. Superior Court, 148 Wash. 1, 267 P. 770."

In the case of In re Constitutionality of Section 251.18, Wis. Statutes (1931) 204 Wis. 501, 236 N.W. 717, it is stated:

"From the foregoing, it is concluded that the power to regulate procedure, at the time of the adoption of the Constitution, was considered to be essentially a judicial power, or at least not a strictly legislative power, * * *".

In Burton v. Mayer (1938) 274 Ky. 263, 118 S.W.2d 547, the Court of Appeals, had this to say concerning the relationship of the legislature and the highest appellate court of that state:

"Section 109 of the State Constitution vests the 'judicial power' of the Commonwealth 'in the senate when sitting as a court of impeachment, and one supreme court (to be styled the court of appeals) and the courts established by this Constitution.' The separation of the judicial power from the executive power and the legislative power was not merely a matter of convenience. The three branches of government are co-ordinate and yet each, within the administration of its own affairs, is supreme. The grant of the judicial power to the courts carries with it, as a necessary incident, the right to make that power effective in the *administration* of justice under the Constitution. (Citations.) Rules of practice and procedure are, fundamentally, matters within the judicial power and subject to the control of the courts in the administration of justice. The courts accept legislative *co-operation* in rendering the judiciary more effective. They deny the right of

legislative *dominance* in matters of this kind. Dowling, 'The Inherent Power of the Judiciary,' Vol. XXI, American Bar Association Journal, page 635."

In Ploughe v. Indianapolis Rys. (1943) 222 Ind. 125, 51 N.E.2d 626, the Supreme Court of that state stated:

"The contention that the subject of court procedure is within the exclusive jurisdiction of the legislative branch of the government, and that the courts are powerless to make rules governing their own business, is as unique as it is novel. Carried to its logical conclusion, this means that the courts of this state are at the mercy of the General Assembly, which, conceivably, may destroy our entire judicial system by the simple artifice of imposing unworkable procedural regulations. We subscribe to no such doctrine."

See also: Wayman v. Southard, 10 Wheat. 1, 6 L.Ed. 253, 21 C.J.S. Courts § 170 b (2), p. 264; 14 Am.Jur. 355, Courts § 151; Dean Roscoe Pound, The Rule-making Power of the Courts, 12 American Bar Association Journal, 599; Dowling, The Inherent Power of the Judiciary, 21 American Bar Association Journal, 635; John H. Wigmore, Legislature Has no Power in Procedural Field, 20 Journal of the American Judicature Society, 159; Homer Cummings, A Rounded System of Judicial Rule Making, LXXII United States Law Review 337.

Plaintiffs have countered such authorities by pointing to the different constitutional provisions of the respective states. In their brief it is stated:

"It is the contention of the petitioners in this action that in Idaho we have a very unusual Constitution insofar as the rule making power of the Supreme Court is concerned to prescribe adjective rules of civil procedure for the lower courts, and because of these unusual and rather different provisions of our Constitution we contend that the organic constitutional law of this state vests the power to make adjective rules of proceedings for the lower courts *strictly in the legislature*, and since the power to make rules of proceedings for the lower courts was so expressly and in such unmistakable language placed with the legislature, *the legislature cannot withdraw from that power, nor can it delegate that power to some other coordinate branch of the government, even to the judiciary.*"

Plaintiffs refer to Idaho Const.Art. 5, §§ 13, 25, 26, Art. 3, § 19(3), and Art. 21, § 15. Art. 5, § 13 is set out above. Art. 5, § 25 provides that the district judges shall report to the justices of the Supreme Court defects or omissions in the laws, and that the justices of the Supreme Court shall report de-

fects and omissions in the Constitution and laws to the Governor for transmission to the legislature. Art. 5, § 26 provides for general and uniform laws relating to the courts, and that the judicial powers, proceedings and practices of all courts of the same class or grade, so far as regulated by law, shall be uniform. Art. 3, § 19, prohibits the legislature from enacting local or special laws regulating the courts. Art. 21, § 15, directs the legislature to pass all necessary laws to carry into effect the provisions of the Constitution.

■ The first portion of Art. 5, § 13, (The Legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government,) forbids the legislature from exercising powers rightly pertaining to the judicial department. This is a direct recognition and reiteration of the separation of powers provided by Art. 2, § 1. This prohibition against the exercise of the judicial powers is qualified, however, by the next portion of Art. 5, § 13, which states: " * * but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, * * * ". Again this portion of Art. 5, § 13, is dealing with the "judicial" powers granted to the judiciary and recognized by Art. 2, § 1—the words

"of their powers" can only mean judicial powers, for the courts have no authority to exercise powers other than judicial powers. The use of the words "when necessary" in this portion of the section has reference only to the situation where the "method of proceeding" has not otherwise been regulated, or where changing time has required further or different regulation, then the legislature shall regulate such matters. But this does not specify that the legislature is the sole and only source of such powers, as would be the case if this provision had read "and the legislature alone shall provide a proper system of appeals and regulate by law, when necessary, etc." And finally, the last quoted portion of the section is again qualified by the phrase "so far as the same may be done without conflict with this Constitution." Article 5 of the constitution deals wholly with the judicial power, and it is our conclusion that the provisions of Art. 5, § 13 thereof, grants only limited authority to the legislature to enter into the judicial field of rule-making when the necessity therefor appears, and that the judicial power in the area of rule-making has not been exclusively pre-empted by the legislature.

■ It is thus our conclusion that the legislature in enacting the provisions of Chapter 90, Session Laws of 1941, was not delegating legislative power to the Supreme Court, but as is stated in the first section of the act, the legislature was recognizing the

**438**

inherent power of the Supreme Court in the area of rule-making procedure in all courts.[1]

Plaintiffs further contend that Chapter 90, Session Laws of 1941, is invalid for the reason that it granted to the Supreme Court the unrestricted and blanket authority to repeal legislative acts. It is asserted that the legislature and only the legislature has the power to enact laws and the legislature and only the legislature has the power to repeal those laws. This contention is best answered by the case of Burney v. Lee (1942) 59 Ariz. 360, 129 P.2d 308, 311, wherein the Supreme Court of Arizona stated:

> "But, says defendant, even admitting this to be true, it does not necessarily follow that the court had the right to repeal an existing statute of the legislature, such as section 3661, supra. This is true, but the legislature itself expressly states in section 3 of chapter 8, supra, that all statutes relating to pleading, practice and procedure, which were in existence at the time chapter 8 took effect, should be considered to be rules of court only, and should remain in effect as rules until modified or suspended by rules promulgated by the court pursuant to the act. This is, in effect, a legislative repeal of existing statutes of procedure to take effect at an undetermined but a determinable future time. If the legislature has the power to repeal an existing act in this manner, then section 3661, supra, was repealed as of the date the supreme court promulgated a rule inconsistent therewith. The question of whether this may be done is answered in the case of State [ex rel. Foster-Wyman Lumber Co.] v. Superior Court, 148 Wash. 1, 267 P. 770, 774, in the following language:
>
> "'A minor attack upon the rule needs here to be mentioned. It will be noticed that the statute of 1925 provides that:
>
> "'"Sec. 2. When and as the rules of courts herein authorized shall be promulgated all laws in conflict therewith shall be and become of no further force or effect."
>
> "'It is argued that, since the statute takes effect upon the happening of a subsequent event, to wit, the making of the rules by the court, there is such a contingency as to destroy the effect of the legislation. The weight of authority is that a statute is not unconstitutional because it does not take effect until the happening of a subsequent event. Many authorities might be cited, but we deem it sufficient to quote from

---

1. Justice Ailshie on two separate occasions discussed the problems concerning the rule making power of the courts. See: Proceedings of the Idaho State Bar, Vol. XI, p. 101, and Vol. XII, p. 62.

the text of 12 C.J. p. 864, where the authorities are collated:

" ' "Where an act is clothed with all the forms of law and is complete in and of itself, it is fairly within the scope of the legislative power to prescribe that it shall become operative only on the happening of some specified contingency. Such a statute lies dormant until called into active force by the existence of the conditions on which it is intended to operate." '

"It is further urged that section 3, supra, violates section 14, part 2, of article 4 of the constitution, which reads as follows: '(Legislation by reference.)— No act or section thereof shall be revised or amended by mere reference to the title of such act, but the act or section as amended shall be set forth and published at full length.'

"The section in question does not amend nor revise any particular act. It merely states such acts are to be what they already were—rules regulating the procedure of the courts, and provides that upon the happening of a certain contingency they shall be repealed. The constitutional provision does not refer to the repeal of existing legislation, but to the amending thereof.

"We hold, therefore, (a) that Chapter 8, supra, is not unconstitutional in that it is an attempt to delegate legislative power, but is valid as a withdrawal by the legislature from the field which it has hitherto occupied concurrently with the courts, (b) that section 3 thereof is not invalid because the time of the repeal of existing legislation referred to therein is contingent upon the occurrence of other matters, and (c) that a conditional repeal does not fall within the provisions of section 14, part 2 of article 4 of the constitution."

Sec. 4 of Chap. 90, S.L.1941, repealed the laws inconsistent therewith, with the date of the repeal being determined by a subsequent event—the date of the promulgation of the rules by the Supreme Court. Heat Pump Equipment Co. v. Glen Alden Corp. (1963) 93 Ariz. 361, 380 P.2d 1016; State Tax Commission v. Miami Copper Co. (1952) 74 Ariz. 234, 246 P.2d 871; United States Fidelity & Guaranty Co. v. State (1947) 65 Ariz. 212, 177 P.2d 823; Burney v. Lee, (1942) 59 Ariz. 360, 129 P.2d 308.

Having determined that the enactment of Chapter 90, S.L. 1941, was not an unconstitutional delegation of power by the legislature, and that rules of this Court adopted pursuant to such authority are not unconstitutional enactments, it becomes necessary to consider one further issue presented by these proceedings.

As previously stated, the trial court set the cause for trial without a jury. This was done by reason of the failure of the

plaintiffs to demand a jury trial in conformity with the provisions of I.R.C.P. 38(b) which provides:

"Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten (10) days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

In the lower court action the plaintiffs did not demand a jury trial until some time had elapsed after the last pleading directed to the issues had been filed. Plaintiffs contend that the refusal of the trial court to recognize their subsequent demands for a jury trial is contrary to their constitutionally guaranteed right of a trial by jury. Idaho Const. Art. 1, § 7 provides: "The right of trial by jury shall remain inviolate; * * *. A trial by jury may be waived * * * in civil actions by the consent of the parties, signified in such manner as may be prescribed by law. * *" Art. 5, § 1 provides "* * * Feigned issues are prohibited, and the fact at issue shall be tried by order of court before a jury". Plaintiffs claim that I.C. § 10–301, which provides:

"Trial by jury may be waived by the several parties to an issue of fact in actions arising on contract, or for the recovery of specific real or personal property, with or without damages, and with the assent of the court, in other actions in the manner following:

"1. By failing to appear at the trial.

"2. By written consent, in person or by attorney, filed with the clerk.

"3. By oral consent, in open court, entered in the minutes."

governs, and that I.R.C.P. 38(b) wholly reverses the process, making it the duty of a litigant to preserve his right to trial by jury, instead of waiving it by affirmative action.

■ It is first to be noted that I.C. § 10–301 was adopted as a court rule under authority of I.C. § 1–212 through § 1–215. See: order of the Supreme Court, March 19, 1951, effective September 19, 1951 (appendix S.L.1951, p. 832). This rule, formerly I.C. § 10–301, was wholly superseded by I.R.C.P. 38(b), I.R.C.P. 86.

Under I.R.C.P. 38(a) the right to trial by jury remains inviolate by its express terms. Art. 1, § 7, encompasses the same rights mentioned by the 7th amendment to the Constitution of the United States; Schloemer v. Uhlenhopp (1946), 237 Iowa 279, 21 N.W.2d 457.

■ In Schloemer v. Uhlenhopp, supra, the Supreme Court of Iowa had to resolve the question of whether their court rule

providing that a jury trial was waived unless written demand be filed, conflicted with the provisions of their constitution which said "The right of trial by jury shall remain inviolate." That court held that such rule did not violate the constitutional provisions. The appellant had recognized that under the federal practice such rule did not violate the constitutional provisions, recognizing that under the federal practice such rule of procedure was acceptable, but argued that the Federal constitution was different in effect when it provided "the right of trial by jury shall be preserved." The Iowa court discounted such distinction, relying upon the Illinois case of Stephens v. Kasten (1943), 383 Ill. 127, 48 N.E.2d 508, wherein it was stated, "The very words of the constitution intend that in order to have a jury trial, some affirmative act toward that end may be taken by a party litigant." The Iowa court continued:

"Appellant further argues that Rule 177 does 'abridge, limit and modify' a substantive right and is therefore in excess of the rule making power of the court granted by Chapter 311 of the Acts of the Forty-ninth General Assembly under which the Rules of Civil Procedure were promulgated. The argument begs the question. It assumes the correctness of the proposition sought to be proven. We think the reasonable regulation of procedure prescribed by the rules does not abridge or limit or modify the right which the constitution says shall remain inviolate. It merely prescribes an orderly procedure by which the litigant may exercise his right."

In Shores v. Murphy (Fla.1956), 88 So. 2d 294, the Supreme Court of Florida stated that their court rule concerning failure of a party to demand a jury trial being a waiver of jury, met the constitutional requirements that the right of trial by jury shall remain inviolate. See also: Ohlinger v. United States (D.C.Idaho 1955), 135 F. Supp. 40, reversed on other grounds, 9 Cir., 219 F.2d 310.

"While the right to a trial by jury is a constitutional guarantee Section 64 imposes regulations as to what must be done by a litigant to display his desire for a jury trial so as to insure the orderly presentation of the business of the court. This section has been held to be reasonable in its requirements, and constitutional. Stephens v. Kasten, 383 Ill. 127, 48 N.E.2d 508. The provision is not intended to impose a burden on a person or to create a condition precedent of the enjoyment of a constitutional privilege, but merely establishes an orderly method for a party to a lawsuit to inform the court of his desire to have his case tried by a jury, as is his right. In the light of the accom-

panying sections of the Civil Practice Act, the Supreme Court rules above quoted, and the decisions of our Supreme Court, Section 64 is not intended to diminish the right to a trial by jury as is guaranteed by both our State and Federal Constitutions." Roszell v. Gniadek (1952) 348 Ill.App. 341, 109 N.E.2d 222, 224.

The provisions of I.R.C.P. 38(b) establish the procedure to be employed in determining whether a party has waived the right to trial by jury. Its provisions provide an orderly procedure for the use of a jury in a particular case. Under the Seventh Amendment to the United States Constitution, which preserves the right to trial by jury in civil suits at common law, there is no provision authorizing a waiver of a jury trial; yet the Federal Rules of Civil Procedure concerning waiver of jury have been held constitutional. United States v. Moore, 340 U.S. 616, 71 S.Ct. 524, 95 L.Ed. 582 (1951); General Tire & Rubber Co. v. Watkins (C.A. 4th, 1964), 331 F.2d 192, cert. denied, 377 U.S. 952, 84 S.Ct. 1629, 12 L.Ed.2d 498.

We adhere to the reasoning of the Supreme Court of Iowa in the case of Schloemer v. Uhlenhopp, supra, and of the Court of Appeals of Illinois in the case of Roszell v. Griadek, supra, and conclude that there is no deprivation of the right to jury trial as guaranteed by Idaho Constitution Art. 1, § 7. See Annot.: 1914 B.Ann.Cas. 1184.

■ Plaintiffs have claimed in their petition and briefs that inequities, unfair treatment, and exorbitant expenses have been accorded litigants by reason of the adoption of certain of the Idaho Rules of Civil Procedure. We are sympathetic with the problems discussed, but in this type of proceeding for writs of mandate and prohibition this court cannot directly deal with such problems. Allen v. Keane, 74 Idaho 385, 262 P.2d 998.

■ Because of plaintiffs presentation of the problem concerning the use of the Idaho Rules of Civil Procedure as a vehicle to override the rights of litigants, it behooves this court again to call the attention of the bench and bar to the underlying motivations for adoption of these rules. It is stated by I.R.C.P. 1:

"They [the rules of civil procedure] shall be liberally construed to secure the *just, speedy and inexpensive determination of every action and proceeding.*" (Emphasis added).

Procedures are provided for discovery, interrogation, taking of depositions, securing of documents for examination and copying, taking of physical examinations, and the other techniques which provide means by which litigants may enter upon the trial of a cause reasonably assured against surprise of unknown or undisclosed facts. Surrounding these procedures the Rules of Procedure have established certain safeguards. I.R.C.P. 26(b), 30(b), 30(d), 31(d),

33, 34, 35(a), 45(d)(1). Whenever use of such discovery procedures become unreasonably oppressive and onerous it becomes the duty of the court and counsel immediately to activate the safeguards to avoid unjust results. See: 4 Moore's Federal Practice 26.02[3] for cogent statement.

▪ Along the same vein, it is to be pointed out that the requirement that the rules of civil procedure be liberally construed to secure just determination of any particular case is equally applicable to the provisions of I.R.C.P. 39.

"The rules are designed to achieve substantial justice and the court has discretion to relax the time requirement for demanding a jury trial and on motion to grant a jury trial to a party who has waived it by failing to make a timely demand." 2B Barron & Holtzoff, Federal Practice and Procedure, 66 § 892.

Where a jury trial is desired after time to demand a jury as of right has expired, a motion to the Court under Rule 39, rather than service of a demand under Rule 38 is the proper course. Roth v. Hyer (C.C.A. 5th 1944) 142 F.2d 227, cert. denied 65 S. Ct. 38, 323 U.S. 712, 89 L.Ed. 573. As a footnote 22 supp. 2B Barron & Holtzoff, § 892, the authors have stated:

"The view stated in the text, that technical insistence upon imposing a penalty for default by denying a jury trial is not in the spirit of the rules, is supported by the enlightening Note, 1962, 47 Iowa L.Rev. 759, which demonstrates that in recent cases courts have been reluctant to use their powers under Rule 39(b) with the result that many litigants have been denied a jury trial through mere inadvertence. The commentator concludes, at 765, that motions under Rule 39(b) for jury trial where no timely demand was made should be granted in that absence of any showing of delay to the nonmoving party in transferring the case to the jury docket, or that judicial time will be wasted because it is too late to fill the vacancy left on the nonjury docket."

It is essential, that upon a request for trial of issues by a jury, even after the time for demand for jury has elapsed, that the trial court liberally exercise its discretion in this regard to carry out the designed purpose of the Idaho Rules of Civil Procedure. See Annot.: 64 A.L.R. 2d 506.

Defendant's motions to quash the alternative writs of prohibition and mandate are granted; proceedings dismissed with costs to defendants.

McQUADE, C. J., and TAYLOR, SMITH and KNUDSON, JJ., concur.