616 P.2d 263

The STATE of Idaho,
Plaintiff–Respondent,

v.

James Leroy KNEE,
Defendant–Appellant.

No. 12960.

Supreme Court of Idaho.

Sept. 3, 1980.

Klaus Wiebe, Public Defender, Larry D. Scott, Boise, for defendant–appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff–respondent.

DONALDSON, Chief Justice.

Defendant–appellant James Knee appeals his conviction for robbery, claiming there was insufficient evidence presented by the state to sustain his conviction and that allowing the use of a prior felony conviction for impeachment purposes deprived him of his right to a fair and impartial jury trial. We affirm the conviction.

On December 12, 1977, at approximately 8:30 p. m., Knee was stopped in his vehicle and charged with the robbery of a store in Boise. The robbery had occurred about one hour earlier when a man walked into the Sun Ray Dairy Store on Overland Street. He was casually observed by a store clerk who was discussing her work schedule for the Christmas holidays with her supervisor on the telephone.

The clerk noticed the man approach the counter with a can of pop and a pack of gum. While still on the phone, she rang up the sale and the cash drawer automatically opened. She turned to complete the sale and as she did so, the man pulled a ski mask over his face and placed his right hand into his coat pocket. The clerk retreated screaming and the man grabbed the money in the cash drawer and ran out the front door. A suspect was observed fleeing in a pickup truck, the description of which matched the defendant's pickup. Knee was arrested shortly thereafter and charged with the crime.

A jury trial was conducted on the charge in Ada County District Court. At trial, the store clerk identified Knee as the man who entered the store, pulled on the mask, and took the money from the cash register. Defendant chose to take the witness stand and, on cross–examination, the prosecuting attorney asked Knee if he had ever been convicted of a felony, to which Knee replied "Yes." At the time, no objection was made by either Knee or his defense counsel to the question asked by the prosecution.

At the conclusion of the trial, the jury returned a guilty verdict on the robbery charge and Knee was sentenced to seven years in the Idaho State Correctional Institute. This appeal followed.

■ Knee raises three assignments of error, each of which we will address separately. First, Knee contends that the use of a prior felony conviction for impeachment purposes is a substantive policy consideration which is rightfully outside the inherent rule–making authority of this Court. Appellant recognizes the inherent authority of this Court to make rules of procedure under I.C. § 1–212 but argues that I.R.C.P. 43(b)(6), which allows a defendant to be impeached by use of a prior felony conviction, is an evidentiary rule that modifies his substantive right to a fair

and impartial jury trial, and thus violates I.C. § 1–213.[1] Knee argues that the decision to have such a rule which permits defendants to be impeached in this manner should properly be a legislative one rather than one determined by the Court. In effect, Knee asks us to abolish I.R.C.P. 43(b)(6).

We find this argument unpersuasive. In the past this Court has had occasion to uphold its rules of civil procedure following a challenge to their validity on the basis that they denied plaintiffs their constitutional rights. *R.E.W. Construction Co. v. District Court*, 88 Idaho 426, 400 P.2d 390 (1965). In that case, we recognized the authority of this Court to adopt the Idaho Rules of Civil Procedure despite the argument made by the appellants that rule–making power was consigned solely to the legislature. In so doing we upheld the validity of the rules of procedure under attack, particularly those relating to discovery, the copying of documents, procedure for pretrial conference and denial of trial by jury, even though this meant appellants could possibly be denied a substantive right by failing to comply with these rules. The inherent rule–making authority of this Court has also been recognized in other cases. *State v. Griffith*, 97 Idaho 52, 58, 539 P.2d 604, 610 (1975); *State v. Yoder*, 96 Idaho 651, 654, 534 P.2d 771, 774 (1975); *State v. Jennings*, 95 Idaho 724, 726, 518 P.2d 1186, 1188 (1974).

Rules of evidence have been generally regarded as procedural in nature, *Ammerman v. Hubbard Broadcasting, Inc.*, 551 P.2d 1354, 1357 (N.M.1976); see *McCarthy v. Arndstein*, 266 U.S. 34, 41, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924), and are determined by the law of the forum where the action is pending, 1 S. Gard, Jones on Evidence § 1.14, at 19 (6th ed. 1972). Since this Court has the inherent power to promulgate procedural rules, it follows that this Court also has the inherent power to establish rules of

---

1. Idaho Code, § 1–213 provides: "The Supreme Court shall prescribe, by general rules, for all the courts of Idaho, the forms of process, writs, pleadings and motions, the manner of service, time for appearance, and the practice and pro- cedure in all actions and proceedings. *Said rules shall neither abridge, enlarge nor modify the substantive rights of any litigant.*" (emphasis added)

evidence, including a rule which allows a criminal defendant to be impeached by the use of a prior felony conviction.

Knee argues that, by repealing I.C. § 9–1209 in 1975,[2] the legislature intended to eliminate the practice of impeachment by prior conviction. This is not the case. While I.C. § 9–1209 was repealed, 1975 Idaho Sess.Laws, ch. 242, p. 651, it should be noted that the enactment repealing that provision stated that its purpose was "to repeal procedural statutes in conflict with or covered by rules adopted by the Idaho Supreme Court on procedural matters." Clearly this reveals a recognition on the legislature's part that the evidentiary rule contained in I.C. § 9–1209 was procedural in nature and that this Court had the authority to promulgate such evidentiary rules.

In addition, I.C. § 9–1302, which requires that a witness must answer to the fact of his previous conviction for a felony, was not repealed. The fact that the legislature did not repeal this statute is indicative of an intent to retain the practice of impeachment by use of a prior felony conviction.[3] Thus, Knee's first assignment of error may be rejected.

Next, Knee contends that the use of a prior felony conviction for impeachment purposes deprives him of his right to a fair and impartial jury trial because by allowing the jury to hear a defendant testify that he has been previously convicted of a felony, the jury will naturally believe the defendant is guilty of the charged offense as well. Thus, a defendant will be deprived of an impartial jury because the prior conviction will only serve to create prejudice in the minds of the jurors.

However, the widespread practice of using a prior felony conviction for impeachment purposes has never been recognized as an inherently unfair practice. *See McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971), *vacated on other grounds*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972) (criminal defendant must weigh taking the witness stand against the risk of impeachment); *see also Ryan v. State*, 580 F.2d 988, 993 (9th Cir. 1978). While there is some possibility that the fact of a prior felony conviction could be prejudicial to the defendant, it should be noted that the use of a prior felony conviction for impeachment purposes is not without its precautionary measures. *See State v. Shepherd*, 94 Idaho 227, 486 P.2d 82 (1971) (for the limitations on this rule in effect prior to the repeal of I.C. § 9–1209). *See also* I.R.C.P. 43(b)(6) (for the limitations which went into effect after the 1978 amendments to this rule were adopted).

In addition, Jury Instruction No. 19 limited the effect of Knee's testimony regarding his admission of a prior felony conviction. It provided:

> "The fact that a witness has been convicted of a felony, if such be a fact, may be considered by you *only for the purpose of determining the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness's credibility.* It is one of the circumstances that you may take into consideration in weighing the testimony of such a witness." (emphasis added).

Such an instruction was sufficient to limit the prejudicial impact of the prior conviction since the jury was still free to deter-

---

**2.** Former I.C. § 9–1209 provided: "A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

**3.** It should be noted that I.C. § 9–1302 pertains to the privilege of witnesses who testify, and requires that a witness must answer as to the fact of a previous conviction for a felony. While this statute has the same effect as I.C. § 9–1209, in that a witness may be impeached as a result of answering the question, the statute is primarily intended for the preservation of a witness's right against self–incrimination. Since the Supreme Court has not adopted any rules which affect a witness's privilege, there was no need for the legislature to repeal this statute.

mine that the defendant was a credible witness.

Further, Knee did not object to the question of whether he had ever been convicted of a felony, and did not object to the jury instructions given at trial, including Instruction No. 19. Such failure to timely object precludes him from raising the issue on appeal for the first time. *State v. McCurdy*, 100 Idaho 683, 686, 603 P.2d 1017, 1020 (1979); *State v. Watson*, 99 Idaho 694, 701, 587 P.2d 835, 842 (1978). Thus, we reject Knee's second assignment of error.

Knee's final assignment of error is that, if he is to be convicted, he should only be convicted for the offense of larceny from a person rather than robbery. Knee contends that his alleged actions do not constitute the crime of robbery as statutorily defined [4] because the taking of money was accomplished without the use of force or fear.

We reject this argument. The record is replete with testimony by the store clerk that she screamed because she was frightened. As the record indicates, the victim was confronted by a masked man with a hand in one of his coat pockets. In such circumstances the jury could have reasonably concluded that the masked individual intended to rob the store, that he was armed and prepared to do so, and that the victim feared for her own safety. The jury apparently found that such fear was sufficient to meet the requirements for robbery under I.C. § 18–6502. Fear and the force of fear may be created by threatening circumstances. *Hawthorne v. State*, 501 P.2d 155, 157 (Alaska 1972); *Mangerich v. State*, 572 P.2d 542 (Nev.1977) (which held that where defendant entered the store, said "good morning" to a female clerk, placed a ski mask over his head and stated: "Give me all the money," the defendant could be convicted of robbery, despite his claim that the

clerk's fear was unreasonable under the circumstances.)

It is unnecessary for the victim to actively resist the robber in order to provoke a more compelling display of force. It would be absurd to hold that the victim, a 17 year old high school girl standing 5'3" in height and weighing approximately 100 pounds, was required to "take on" the robber in a fight in order to establish the force necessary to constitute the crime of robbery. *See State v. Lewis*, 96 Idaho 743, 749, 536 P.2d 738, 744 (1975); *People v. Flores*, 145 P.2d 318, 320 (Cal.1944). We therefore affirmed the jury's finding that the crime of which Knee was convicted constituted robbery.

Conviction affirmed.

SHEPARD, BAKES and McFADDEN, JJ., concur.

BISTLINE, Justice, dissenting.

Had the Court's opinion relative to the impeachment issue rested solely on the basis of Knee's failure to object at trial, I very well might have concurred. Failure to register a timely objection should ordinarily preclude appellate review of claimed error at trial. *State v. Watson*, 99 Idaho 694, 701, 587 P.2d 835, 842 (1978). Here, however, the Court is not content to stop there, but seizes upon this case to champion the philosophy that "*this Court also has the inherent power to establish rules of evidence.*" This is a dangerous statement, and has no precedent whatever, other than the extremely doubtful case of *Ammerman v. Hubbard Broadcasting, Inc.*, 551 P.2d 1354 (N.M. 1976), which case the Court here sees as standing for the proposition that "[r]ules of evidence have been generally regarded as procedural in nature."

Even before Idaho was a state, and, *a fortiori*, at the time it became a state and adopted its constitution, the territorial leg-

---

4. Under I.C. § 18–6501, robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The "fear" which constitutes robbery may be either a fear of an unlawful injury to the person or property of the person robbed, or the fear of immediate harm to the person or property of anyone in the presence of the person robbed. I.C. § 18–6502.

islature had specified the provisions governing the qualifications and disqualifications of witnesses. Idaho Rev.Stat. §§ 5956, 5957 and 5958 (1887). These territorial laws were carried forth as laws of the State of Idaho by virtue of § 21 of the Idaho Admission Bill, ch. 656, 26 Stat. 215, and were eleven years thereafter codified in Volume 3 of the Idaho Code Annotated, 1901, under TITLE XXI, EVIDENCE, §§ 4404, 4405 and 4406. Those laws remain in effect to this date, as I.C. §§ 9–201, 9–202 and 9–203. The legislature has made some amendments, but generally those laws stand inviolate.

Section 9–201 dictates who may be witnesses. In doing so it effects a substantial change from the early English Common Law, declaring that persons cannot be excluded as witnesses because of personal interest in the action, and cannot be excluded for religious belief, or by reason of criminal conviction.

Section 9–202 denies the right to be a witness to those of unsound mind when called, children under 10 years of age who appear incapable of receiving and relating just impressions, and parties or assignors of parties in a proceeding to collect from the estate of a deceased person.

Section 9–203 protects confidential relations: husband–wife; attorney–client; priest–penitent; physician–patient; counselor–student; parent–child.

Four members of the Court are apparently of the sincere belief that those statutory provisions are not substantive, but matters of mere procedure.

I am not only unpersuaded, but apprehensive as to the Court's apparent eagerness to use this case as the vehicle in which to declare its own power and omnipotence for establishing rules of evidence–especially at a time when the Idaho Bar Association has appointed an outstanding committee to review the present rules of evidence, with a view toward suggesting needed changes, if any, and with the underlying question whether it should take its report and recommendations to the Court or to the legislature.

It is one thing for the people, through their legislature, to declare that a person of a certain faith may or may not bear witness. Similarly, the people ought not to object where it is they who have said that a person convicted of a crime may not be excluded as a witness for that reason; through another legislature the people may decide to revoke that right to testify. And a people, through their legislature, may provide a confidential shield to certain conversations, or may not do so. But by what right does a court take unto itself such awesome power?

I take it to be a self–evident proposition that any time a litigant, be he civil or criminal, is denied the right to present testimony, his substantive rights have been affected. It takes no large amount of reflection to visualize countless situations where being denied the benefit of a potential and available witness's testimony will result in a miscarriage of justice. Yet the people, through their legislature, have willed that it is in the public interest that doctors, priests, and lawyers may not testify as to some communications, but an ex–convict may do so, as may a person professing no belief in God. Be that as it may, such decisions are not for a court to make.

Section 6082 of the 1887 Revised Statutes, carried forward into statehood where it became § 4490 of TITLE XXI, EVIDENCE, of the 1901 Idaho Code Annotated, provided that a witness could be impeached by showing that he had been convicted of a felony. In that regard our concern might have been the impeachment statute, I.C. § 9–1209, but it was totally repealed in 1975. I.C. § 9–201, which allows the testimony of a person convicted of a crime, is still part of our law, but a court rule may yet change that. I would concede that the legislature, not the Court, if it may rule out altogether the testimony of one once convicted of any crime, may properly provide that such allowed testimony can be so

impeached.[1] But such is not the province of the Court.

Impeachment of a witness, of course, means nothing less than to cast in doubt the veracity of a witness by the means of adducing proof that he is unworthy of belief. Black's Law Dictionary 678 (5th ed. 1979). Such being the case, it is readily seen that there may be little difference in prohibiting a litigant from using Mr. Smith's testimony at all, Mr. Smith having been convicted of a crime, and informing that litigant that he may use Smith's testimony, but the jury may thereupon be advised that Smith is a convicted felon.[2]

Although the Court's opinion suggests, apparently as an ameliorating factor, that "the widespread practice of using a prior felony conviction for impeachment purposes has *never* been recognized as an inherently unfair practice," (my emphasis) the Court is apparently thinking only in terms of its present composition. In *State v. Owen*, 73 Idaho 394, 253 P.2d 203, witness the keen and perceptive remarks of Justice Keeton in dissent:

> "Every attorney, with even limited experience in criminal practice, knows that impeachment of an accused in a criminal case is not, in fact, the real purpose of the examination. It simply pictures the misconduct and villainy of the accused and prejudices the jury by injecting hate into the proceedings." 73 Idaho at 427, 253 P.2d at 224 (Keeton, J., dissenting).

That language was specifically approved by four members of the Court, three of whom are still sitting, in *State v. Shepherd*, 94 Idaho 227, 486 P.2d 82 (1971). Witness also the recent admonition of unfairness by Justice Spear, joined by Justice McQuade, in *State v. Dunn*, 91 Idaho 870, 434 P.2d 88 (1967):

> "A *serious question of fundamental unfairness* arises when an evidentiary rule may deter a defendant from testifying in his own behalf or if he does testify subjects him to evidence highly prejudicial on the issue of guilt though inadmissible for that purpose." 91 Idaho at 879, 434 P.2d at 97 (Spear, J., concurring specially) (quoting *Stevens v. United States*, 370 F.2d 485, 486 (D.C.Cir.1966) (emphasis added) (footnotes omitted).

Note also, while reviewing just our Idaho decisions, that four members of the Court joined in the opinion in *State v. Owen, supra*, which contained this statement: "It is quite universally held that a witness may be impeached under this or similar *statutory* authority." 73 Idaho at 405, 253 P.2d at 209 (emphasis added).

The Court today acknowledges that its rule "could be prejudicial to the defendant." As suggested by Justice Keeton, any attorney of even limited experience will find this a bit humorous. The only reason that an adverse party, be it a civil or criminal proceeding, brings in such evidence is to prejudice the other party. As a former member of the Court worded it:

> "It is obvious to me that such evidence was introduced not for the purported reason, *i. e.*, impeachment, but, rather for the purpose of prejudicing the jury against the accused and depriving him of a fair and impartial trial on the merits of the *one* charge for which he was being tried." *State v. Dunn*, 91 Idaho 870, 878,

---

1. The fairness and propriety of such impeachment, as addressed many times by various members of this Court, was thoroughly reviewed in *State v. Palmer*, 98 Idaho 845, 847, 574 P.2d 533, 535 (1978) (Bistline, J., dissenting). As pointed out, we there encountered no claim that I.R.C.P. 43(b)(6), as then written, was a judicial intrusion into the legislative field. Accordingly, I suggested that, I.C. § 9-1209 being gone, at the least the rule should be enlightened by the Court "to fulfill the promise implicit in its own earlier decisions." *Id.* at 851, 574 P.2d at 539.

Although Rule 43(b)(6) was thereafter enlightened, certainly for the better, I voted against *any* such rule because of its being an improper intrusion into the legislative field. Today we have under review a case challenging the rule, which the Court might have readily avoided–strictly on the applicability of *State v. Watson, supra.*

2. In that regard, while lawyers and judges realize that felony is but a category of crime higher than a misdemeanor, many lay people are going to see "felon" and "felony" as a more degenerate sort of person.

434 P.2d 88, 96 (1967) (Spear, J., concurring specially).

What we come to is a court–promulgated rule which admittedly will prejudice one party to the other's advantage, no matter what supposed safeguards are attached to it. It is, as I earlier said, one thing for the legislature in its wisdom to enact a statute which produces such a result, but it is entirely another matter for a court to do so, and especially to do so under the guise of calling such a rule of procedure, and at the same time proclaiming its inherent power to establish rules of evidence.

I am not impressed with the Court's argument that Instruction 19 limited the prejudicial effect of showing the felony conviction because of its provision that the *"fact of such a conviction does not necessarily destroy or impair the witness's credibility."* That language is the equivalent of damning with faint praise, and could only have served to drive home to the jury that the fact of a felony conviction could be said to have *destroyed* the witness's credibility, and more often than not will certainly do just that very thing.

The Court's opinion from there goes on to theorize that the limiting effect of Instruction No. 19 was sufficient "since the jury was still free to determine that the defendant was a credible witness." Granted, the jury wasn't directed to find the witness was not credible, but I fall back to that which Justice Keeton wrote almost 30 years ago, at a time when the Court reviewed cases for error, and was not deep in the rule–making business. I am reminded of our recent case of *State v. Crawford*, 99 Idaho 87, 577 P.2d 1135 (1978), where we granted defendant a new trial because at his trial before a jury he was shackled and in leg irons. Under the reasoning of today's majority we might very well have affirmed, doing so on the basis that the defendant's presumption of innocence was in no way denigrated by making him go to trial with all the appearances of being judicially considered a mad dog.

With *R.E.W. Construction Co. v. District Court of Third Judicial District*, 88 Idaho 426, 400 P.2d 390 (1965), I have no argument. The Court there relied on a sound opinion from Washington, *Foster–Wyman Lumber Co. v. Superior Court*, 267 P. 770 (1928), as authority for holding that the legislature may turn back procedural rule-making to the judicial branch of the government, notwithstanding the provisions of the Idaho Constitution, Art. 5, § 13.

The problem is that mentioned at the outset–the Court's inability or determined unwillingness to recognize as procedural that which is procedural, and maintain a hands–off policy in matters of substantive law. A rule which allows your adversary to keep one of your witnesses off the stand can only be a rule of substantive law. A rule which prescribes only the time and manner of raising the objection to your witness testifying is procedural. A rule which allows your adversary to destroy the credibility of your best witness is a rule of substantive law. A rule which would state when and how it may be done is procedural. Although in some instances the distinctions might be blurred, any rule which keeps a witness off the stand, or allows his testimony to be collaterally discredited, for felony conviction, affects his substantive rights–no matter what the procedure which brings about that result.

The United States Supreme Court, now about to conclude two hundred years of existence, has never contended that it has the "inherent right" to promulgate rules of evidence. Quite the contrary, the federal rules of evidence were adopted by Congress. Pub.L. No. 93–595, 88 Stat. 1926, 1935 (1975).[3]

---

**3.** Although Congress made it clear that it retained ultimate authority to pass upon any amendments of the rules of evidence which the Supreme Court might later propose, Representative Holtzman sharply criticized a portion of the bill adopting the rules of evidence which amended the Rules Enabling Act, 28 U.S.C. § 2076 (1978), to allow the Supreme Court to change portions of the rules subject only to Congressional veto. *See* Pub.L. No. 93–595, 88 Stat. 1926, 1948 (1974). She stated that "[r]ules creating, abolishing or limiting privileg-

I see nothing at all to commend the New Mexico Supreme Court's decision in *Ammerman v. Hubbard Broadcasting, Inc.*, 551 P.2d 1354 (N.M.1976), other than how well it serves to illustrate the radical consequences which may result from an uncritical, blanket categorization of rules of evidence as "procedural rules." In *Ammerman*, the New Mexico legislature had adopted a statute which accorded journalists the privilege of withholding information and sources used in the gathering, receiving or processing of information for any medium of communication to the public, unless disclosure was essential to prevent injustice. Declaring that the granting of such privilege was but a rule of evidence, the New Mexico court concluded that the judiciary exercised exclusive control over rules of evidence and procedure, and therefore the legislature was powerless to accord the privilege to journalists. *Id.* at 1359. This clear usurpation by that court of a substantive policy decision made by the New Mexico legislature was achieved only by judicial classification, by fiat, of the journalist's privilege as a "procedural" rule of evidence.

Procedure determines the manner in which a case moves through the courts. Rules which structure the order of appearance of parties, designate times for filing and dictate the manner in which arguments and motions are to be presented are procedural rules and clearly within the power of this Court to adopt. *See State v. Griffiths*, 97 Idaho 52, 58, 539 P.2d 604, 610 (1975) (court may by rule allow appeals to be heard on the record rather than *de novo*); *State v. Yoder*, 96 Idaho 651, 654, 534 P.2d 771, 774 (1975) (court may authorize use of electronically recorded testimony to support issuance of search warrant).

A point of view definitely at odds with the New Mexico court is that set forth in one of the texts:

"It is well settled that *the legislature of a* state has the power to prescribe new, and alter existing, rules of evidence, or to prescribe methods of proof, provided they do not violate constitutional requirements or deprive any person of his constitutional rights; moreover, so long as they do not violate any constitutional provision or deprive a litigant of his constitutional rights, the rules of evidence are subject to the control of, and modification by, the legislature, regardless of whether they affect existing rights, there being no such thing as a vested right in a rule of evidence. *If a legislative provision*, not unreasonable in itself, prescribing a rule of evidence in either criminal or civil cases, does not shut out from the party the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him; however, the legislature has no power to establish rules which, under the pretense of regulating evidence, altogether prohibit a party from exhibiting or establishing his rights, since this would substantially deprive him of due process of law.

"Congress has undoubted power to regulate the practice and procedure in federal courts, including authority over the promulgation of evidentiary rules, and it may exercise that power by delegating to the Supreme Court or other federal courts authority to make rules not inconsistent with the statutes or Constitution of the United States. *But when it comes to evidentiary rules in matters not within specialized judicial competence or completely commonplace, it is primarily for Congress to amass the stuff of actual experience and cull conclusions from it.*" 16A Am.Jur.2d *Constitutional Law* § 850

es are legislative. Nonetheless, under the committee bill we would be allowing the Supreme Court to legislate in the area of privilege subject only to a congressional veto. This procedure is unwise since rules concerning privilege, if enacted, should be done through an affirmative vote by Congress.

"The process is, I submit, unconstitutional as well. The Supreme Court is not given the power under Article III of the Constitution to legislate rules on substantive matters." U.S.Code at 7098. H.R.Rep. No. 93–650, 93rd Cong. 2nd Sess. 4, *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 7051, 7098 (separate views of Hon. Elizabeth Holtzman).

(1979) (emphasis added) (footnotes omitted).

As pointed out by Knee's counsel, it was but a short time ago that the Court itself, while entertaining "certain reservations as to the continued vitality" of the felony impeachment rule, laid its continuing existence at the door of the *legislature*. *Fowler v. Uezzell*, 94 Idaho 951, 956, 500 P.2d 852, 857 (1972). The "wisdom" of the *statute* was noted in *State v. Cliett*, 96 Idaho 646, 534 P.2d 476 (1975). Accordingly Knee's brief properly argues that "the Court had considered itself bound to such policy by the legislative enactment."

To Knee's comment that the legislature repealed the statute in 1975, the attorney general responds with that with which the Court quickly agrees, that "the enactment repealing that provision stated that its purpose was to 'repeal procedural statutes in conflict with or covered by rules adopted by the Idaho Supreme Court on the procedural matters.'" Were one possessed of time to pursue the history of the repealing legislation, one would find, I feel certain, that the Court may not be in any position to do anything but agree with the attorney general simply because the legislation in question may very well be found to have been drafted and promoted by the Court itself. Hence I find no persuasion in the Court's declaration that the repealer's statement of purpose "reveals a recognition on the legislature's part that the evidentiary rule contained in I.C. § 9–1209 was procedural in nature and that this Court had the authority to promulgate such evidentiary rules." Nothing in the text of the repealer, 1975 Sess.Laws ch. 242, p. 651, would have disclosed to a legislator that substantive statutorily enacted rules of evidence were being repealed under the guise of being called (by the drafters of the bill) rules of procedure. At that time, of course, the Court had been in the *procedural* rule–making business since the adoption of the "federal rules" in 1959. It is to be much doubted that not one legislator in over a hundred understood that which the bill was accomplishing.

In fairness to the members of the Court who now for the first time openly declare the Court's inherent power to promulgate rules of evidence, mention should be made that Rule 43(b)(6), in its present form, and in its prior form, were not without the input of a court–appointed committee which included attorneys from throughout the state, which attorneys, or at least a majority of them, were of the apparent belief that such a rule was merely procedural, or were of a belief that the profession would be better served by court–made rules of evidence, than by those enacted legislatively.

Be that as it may, I feel compelled to raise this challenge to what appears to be a court usurpation of a legislative function. I am especially disturbed to see the Court leaning on the *Ammerman* case for support:

> "The very fact of adoption of the New Mexico Rules of Evidence . . . by this court, is conclusive of its determination that at least these rules as adopted are procedural." 551 P.2d at 1357.

I sincerely believe that before future changes in substantive rules of evidence are made, the Court will retreat from its approval of the "divine right" philosophy of the New Mexico court and fulfill the promises implicit in earlier decisions–but unfulfilled today. Hopefully the other members of the Court may see some merit in the thought that it should:

> "[K]eep in mind that while it is composed of experts in constitutional law, the legislature is not. The legislature does have its experts in many and varied fields, but it is not to be expected that educators, bankers, insurance brokers, ranchers, and those in other non–legal fields are properly cognizant of the doctrine of separation of powers, including the right in the legislature, and it alone, to create, modify or repeal *substantive* law. The Court bears the ultimate responsibility of safeguarding the integrity of our Constitution." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 922, 591 P.2d 1078, 1089 (1979) (Bistline, J., concurring).