581 P.2d 1173

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Daniel PHILLIPS, Defendant-Appellant.**

**No. 12618.**

Supreme Court of Idaho.

Feb. 9, 1978.

Robin Jeffrey Stoker, of Rayborn, Rayborn & Ronayne, Twin Falls, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Herbert Thomas Vanderford, Asst. Atty. Gen., Boise, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from orders of the trial court imposing sentence upon appellant following his plea of guilty to a charge of armed robbery.

The trial court orally sentenced appellant as follows:

"It is the sentence of the court that the Defendant be committed to the Board of Corrections at the state penitentiary for a period of time not to exceed 15 years. The actual time to be served, if any, will be determined by other authorities in accordance with Idaho law; provided, however, that the execution of this sentence be, and it is herewith, suspended. The Defendant is placed on probation, the first 120 days of which will be spent with the Idaho Board of Corrections at its North Idaho Correctional Institution."

Thereafter, the trial court entered a written order of commitment which we construe to be the written judgment and sentence. However, therein the trial court did not purport to suspend the sentence and place appellant on probation. Instead, the written order of commitment sentenced appellant to a 15 year term subject to retained jurisdiction in the trial court for 120 days pursuant to I.C. § 19–2601(4). Thereafter, at the request of the Board of Corrections and as authorized by I.C. § 19–2601(4), custody of the appellant was retained for an additional 60 days. At the termination of that period the trial court relinquished its jurisdiction thereby remitting the appellant to serve the 15 year sentence.

■ Appellant raises two issues on this appeal. First, he argues that the trial court's oral sentencing placed him on probation subject to a condition of serving 120 days confinement at the North Idaho Correctional Institution. *See Franklin v. State*, 87 Idaho 291, 392 P.2d 552 (1964). Having served that 120 days, appellant claims a right to release as a probationer. Appellant also contends that he was entitled to a hearing when the trial court relinquished its retained jurisdiction. That assertion is answered in *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977), which held that no such hearing is required.

■ However, we deem resentencing to be necessary since the trial court's order, rendered orally, is ambiguous to the point that we are unable to clearly ascertain its intent. We are unable to determine whether, as in *Franklin v. State, supra*, appellant was placed on probation subject to a period of incarceration or if the trial court imposed sentence and retained jurisdiction pursuant to I.C. § 19–2601(4). Regrettably, the trial court's oral sentence is susceptible of either construction. The case at bar is therefore distinguishable from *State v. Kerrigan*, 98 Idaho 701, 571 P.2d 762 (1977), wherein it was held that the sentence imposed by the trial court created a probationary status rather than a withheld judgment or retained jurisdiction. Here, however, the ambiguity contained in the oral sentence prevents such determination.

■ Although urged by respondent State, we decline to rely upon the written judgment and sentence. I.C.R. 32 and 43 make clear that the defendant must be afforded certain rights at the sentencing stage. If we were to rely upon the written sentence here, those rights could be construed to have been denied the appellant, *i. e.*, the right to be personally present, to be represented by counsel, to speak in his own behalf and to present information in mitigation. Although also urged by respondent State, the written judgment cannot be construed as the correction of an illegal sentence pursuant to I.C.R. 35 since either interpretation of the sentence orally imposed would be lawful had either been clearly and unambiguously imposed. We also note the inapplicability of I.C.R. 36 since the error here was judicial in nature involving the exercise of discretion, and I.C.R. 36 permits correction of clerical errors but not judicial errors. *United States v. Stevens*, 548 F.2d 1360 (9th Cir.), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977).

■ Having found that the trial court's oral sentence was ambiguous, it follows that we reject appellant's contention that the trial court unequivocally imposed proba-

tion. In view of our holding and since we remand for resentencing, consideration of appellant's other assignment of error is unnecessary.

■ Upon remand the trial court shall resentence appellant and if a sentence of confinement is entered, "credit" shall be given for such time as has already been served. The trial court may also consider events "that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' Such information may come to the judge's attention * * * from a new presentence investigation, from the defendant's prison record, or possibly from other sources." *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969) [citation omitted].

Reversed and remanded.

McFADDEN, DONALDSON, and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

Neither the defendant nor the State contended that Judge Ward expressed himself ambiguously in passing sentence. Defendant's main premise, fortified by good authority, is that oral sentencing is binding and controls against any conflicting provisions which appear in the written judgment of conviction or in the written order of commitment. The State, on the other hand, argues that Judge Ward did not suspend sentence under the provisions of I.C. § 19–2601(2) at the time of judgment, but on the first day of a retained 120-day jurisdiction, I.C. § 19–2601(4).[1] Both parties agree that sentence was imposed and suspended.

My inability to join in the Court's determination to reverse stems from my inability to see any ambiguity in Judge Ward's language, plus overwhelming authority that a court's oral pronouncement of sentence *is* binding. Under I.C.R. 32(b) the written judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. The sentence which is set forth in the judgment, however, must be the sentence which was imposed and which was imposed in the presence of the defendant. I.C.R. 43 specifically provides for defendant's presence at imposition of sentence, which presence can only be excused in misdemeanor cases.

The written judgment signed by Judge Ward contains no mention whatever of probation. The record does not show by whom the judgment was prepared, or that it really was "prepared," other than by filling in the blanks on the printed form. Unfortunately, the form selected was not one with probation provisions in it, but rather the form for straight-out commitment with retention of 120-day jurisdiction. The court was certainly entitled to assume that the judgment presented to him incorporated the sentence which he had so recently imposed, but it did not. The undated written judgment was filed on September 14, 1976, certainly lending the inference that it was entered on that day and not at the time Phillips was in court. Judge Ward was obviously of a mind that young Phillips might benefit from a taste of life at a penal institution and Phillips might gain from what Cottonwood had to offer. If Phillips did not benefit and ran afoul of his probation status, he had hanging over him a 15-year term. The problem of sentencing young Phillips was not unlike the problem of sentencing young Kerrigan, *State v. Kerrigan*, 98 Idaho 701, 571 P.2d 762 (1977), with both being first offenders who allowed themselves to become involved in amateurish armed robberies. Kerrigan was an im-

---

1. Quoting directly from the State's brief:

   The sentencing language of the District Court shows that the District Court sentenced Appellant to an indeterminate sentence of fifteen (15) years, suspended execution of that sentence, and placed Appellant on probation with the State Board of Corrections pursuant to *Idaho Code* § 19–2601(4) and (5).

   Inherent in the power to impose a suspension of execution of sentence at any time during the retained jurisdiction is the authority to so suspend at the beginning of the retained jurisdiction.

mature 20-year-old married youth, while Phillips was single and but 19 years of age. When Phillips first appeared in court to enter his guilty plea, Judge Ward deferred sentencing and shortly thereafter reduced bond from $10,000 to $1,000. Phillips, like Kerrigan, became employed and was employed by Green Seed Company at the time of the sentencing hearing. His employer, with five months of opportunity to observe, spoke well of him, "I wouldn't want to lose him. He is machine trained. He is a valuable, a valuable person to us. We like him." To which he added that if Phillips were to be gone for four months, his job was waiting, and his own opinion that Phillips could comply with probation requirements. Phillips' attorney advised the court that he detected a change of attitude brought on by the seriousness of the offense. He preferred a straight probation, but believing that too much to expect, asked for 120 days of retained jurisdiction.

It was in that posture that Judge Ward, whose experience and wisdom in the field are not often doubted or challenged, passed sentence on Phillips, taking him from the maws of the state penitentiary and placing him on probation. That he did so is not open to question. The court's own minutes of September 10, 1976, apparently prepared by a court clerk, Cleo Robinson, and signed by Judge Ward, read, as pertinent, almost identical to the court reporter's transcript of the oral sentencing.

[T]he Court inquired if the defendant had read the report and if there is anything in the report he would like to deny, explain or correct, and defense stated to the Court that a Bench Warrant had been issued for his failure to pay the remainder of the fines and is not the fault of the defendant, defense counsel had been out of town and did not advise the defendant of that matter, otherwise the report is correct as submitted. The Court inquired if there be any reason legal in nature why sentence should not be pronounced and none having been shown to the Court, it was the judgment of the Court based on the plea of guilty that the defendant is guilty as charged in the information, and

IT WAS THE SENTENCE OF THE COURT That the Defendant be committed to the State Board of Corrections for a period of time not to exceed 15 years, the actual time to be served if any to be determined by other authorities of the law, provided, however, the execution of this sentence is hereby suspended and the Defendant is placed on probation, the first 120 days thereof to be served at the Board of Corrections, Boise, Idaho. The Defendant was remanded to the custody of the Twin Falls County Sheriff for transportation to Boise, Idaho.

What exactly did Judge Ward do with Phillips? He imposed sentence, suspended execution, and awarded probation.[2] Probation, however, had attached to it the requirement that the *first* 120 days would be spent at the Cottonwood institution. Without delineating it, the majority of the Court

---

2. The Idaho Judges Sentencing Manual sets forth "examples of standard statements to be made by the judge in sentencing." Page 6.5–1, and form 6.5–A(2), found at page 6.5–5, 6, is strikingly similar to Judge Ward's language:

It is the judgment of the Court that upon your plea of guilty, you are guilty of the crime of _____; and that you are sentenced to the custody of the State Board of Correction for a period of not more than _____ years, the precise time to be determined in the manner provided by law. It is the further judgment of the Court that the execution of sentence be suspended for _____ (years) (months), during which time you will be on probation under the supervision and di-

rection of the District Probation and Parole Officer. As a special condition of probation you will be . . . .

Page 7.4–1 of the same manual reads:

*Suspending Sentence*

A frequently used technique in sentencing is to enter judgment, impose a sentence, suspend all or a part of a sentence, and place the defendant on probation. There are many advantages to this kind of disposition, since it gives the court a lever over the defendant to attempt to control his conduct during the period of probation. As some judges phrase it, the defendant is "carrying the keys" to the jail or prison in his pocket.

dispose of the appeal by finding an ambiguity in the oral sentence.[3] There is none.

There is a *conflict* between the terms pronounced at oral sentencing and the written judgment. The form judgment did not correctly recite the sentence, in which event it is the sentence imposed in the presence of the defendant which controls.

It makes little difference whether the Court here adopts the theorizing of the State or the defendant as to whether Judge Ward proceeded under subparagraph (2) or (4) of I.C. § 19–2601. Critical to the determination to be made today is whether Judge Ward granted probation. Obviously he did. Having imposed sentence of not to exceed 15 years, the sentence would be carried out unless execution were to be suspended. Suspended it was, and no one has yet shown how it becomes material to know whether Judge Ward believed himself suspending execution as he passed sentence under (2), or believed himself suspending it on "day one" of 120 days of retained jurisdiction under (4). The latter theory does tend to lend itself to an absurdity, simply because it serves no purpose. The 120-day provision was enacted into law so that courts *not* suspending on the day sentence was imposed might do so later. Prior to that, a trial court's jurisdiction to grant probation was gone, once sentence had been imposed and not suspended.

In *Kerrigan*, all five members of this Court were agreed that probation, in a felony case, under I.C. § 19–2601, "should be under the supervision of the State Board of Correction as provided in paragraph (5) of said statute." Whereas the trial court in *Kerrigan* did not choose to follow the statute explicitly, and it set up an unsupervised probation following suspension of execution of sentence, here Judge Ward did follow

paragraph (5) of the statute, and in setting up a special condition of probation, 120 days at Cottonwood, acted properly and well within the authority of this Court's holding in *Franklin v. State*, 87 Idaho 291, 392 P.2d 552 (1964). I add parenthetically that he acted compassionately and wisely. See the recent remarks of Bistline, J., dissenting, in *State v. Palmer*, 98 Idaho 845, 574 P.2d 533 (1978).

The State prefers to argue that Judge Ward proceeded under (4) rather than (2) of I.C. § 19–2601, and urges that sentence was imposed, 120-day jurisdiction retained, and only then was probation granted. Relying upon the case of *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977), the State maintains that relinquishment of 120-day retained jurisdiction "had the effect of executing the already imposed fifteen-year sentence." There is language in *Ditmars* which tends to lend itself to such an interpretation:

> Here, the "act of sentencing" occurred on November 18. *By retaining jurisdiction for 120 days pursuant to I.C. § 19–2601(4), the court then suspended the execution of the already imposed sentence.* The order of March 17, 1976 thus effectuated the execution of the sentence. . . (Emphasis added.) 98 Idaho at 474, 567 P.2d at 19.

This language is inadvertently misleading if understood as meaning that language retaining jurisdiction suspends execution of sentence. It does not. Further on in *Ditmars*, on the same page, the Court properly explained that 120-day jurisdiction "is not 'revoked' but merely expires." The statement relied upon by the State should henceforth be disregarded. Retention of jurisdiction does not suspend execution of sentence. Suspension is brought about only when the

---

3. Actually, the Court's opinion reads that the court is unable to ascertain the intent of the oral sentence. While this may be, such inability does not serve to create an ambiguity where one does not in fact exist.

4. Cottonwood rated Phillips' problem primarily as immaturity. A teacher there said:
   He has been able to make a turn around as best he can. He is still immature, but I feel

five years on the main yard would not benefit this individual. He is at the point where there is a 50–50 chance that he might be salvaged. He has not had any major disciplinary reports. His past record is mainly composed of traffic violation. I recommend if he be placed on probation that part of his plan include that he stay employed and his associations and driving be restricted.

trial court so declares. It may be at the time of sentencing under (2), and at any time thereafter where jurisdiction remains retained under (4). Where jurisdiction is retained, suspension of sentence execution remains within the court's power.

All in the world we have before us here is a simple case of the filling in of blanks on the wrong form of judgment. Contrary to I.C.R. 32(b), the written judgment does not set forth the actual sentence, suspension and probation. The record does not show, nor do the rules seem to require, that a copy of the incorrect written judgment was served upon Phillips or his counsel. Also, apparently not served were the *ex parte* orders purporting to extend the court's 120-day retained jurisdiction to 180 days and then purporting to extinguish it.

In seeking the extension and then the relinquishment, the State Board had no way of knowing, short of omniscience, that it was supposed to have received Phillips as a probationer, the suspension of the execution of whose sentence had already been ordered.

As the Court clearly held in *Ditmars*, and has since held, retained jurisdiction simply expires if the court meanwhile does not see fit to grant probation. Here, of course, in actuality, Phillips was on probation, and to the State Board. Accordingly, when Judge

Ward, acting on the request of the State Board, entered the court's order rescinding retained jurisdiction, it would have been surplusage had not suspension and probation already been ordered. Having placed Phillips on probation, district court jurisdiction continued and would continue until that probation was properly revoked. The order entered purported to revoke the 120-days retained jurisdiction of the written judgment, not the court's general jurisdiction of Phillips as a probationer. The original sentence had been suspended. Former Circuit Court Judge Bell, speaking in a unanimous opinion of a Fifth Circuit panel, recently wrote:

> Rule 43, F.R.Crim.P., requires that the defendant be present when sentence is announced by the court, and Rule 32(b) requires that the judgment of conviction shall set forth the sentence. It follows that where there is a discrepancy between the oral pronouncement and the written judgment and commitment, the former *must control*. . . . (Emphasis added.) *Henley v. Heritage*, 337 F.2d 847, 848 (5th Cir. 1964)

There is a very recent case where the trial court, as here, thought some institutional time would be beneficial. *Ward v. United States*, 508 F.2d 664 (5th Cir. 1975).[5]

Unlike *State v. Ditmars, supra*, and as the State here not only concedes but indeed

---

5. Equally beneficial is the complete text of that opinion, portions of which follow:

At hearing on August 10, 1973, the court announced orally:

> I am going to reduce his sentence, but I am going to do it this way. I think he ought to serve some time, and the only way I can give him any time is on a split sentence, and the maximum time I can give to serve on a split sentence is six months, so I am going to give him a split sentence of six months to serve and five years' probation under very careful, strict, close supervision by the probation office.

> \* \* \* \* \* \*

> I want you to tell him, Mr. McGuigan, that if he so much as drinks one beer too many and gets into trouble with the authorities for anything, drunk driving, drunk on the streets, anything else, I am going to revoke his probation and he is going to prison for five years, and I don't care whether it is on the last day of the fifth year of his probation. If

> I revoke it, he is going to serve the whole five years.

Defendant and his attorney were both present at the hearing. Ward was taken into custody on August 13, 1973, and began serving his sentence. Since no written order had been issued after the hearing, Ward wrote the court requesting confirmation of sentence. By reply letter of October 18, 1973, the court stated that the August 10 announcement was only a *proposed* reduction in sentence and that, owing to information obtained subsequent to the August hearing, the original sentence would be reduced to two years confinement. This decision was carried out by order of October 18, 1973. Defendant was not present at that time. Pursuant to 28 U.S.C. § 2255, Ward filed a motion to vacate the October 18 sentence as invalidly imposed in his absence, and beyond the power of the district court. The court below dismissed for failure to state a claim. (Emphasis in original.) *Ward v. United States, supra*, 508 F.2d at 665.

argues, the defendant here on "day one" was placed on probation. Ditmars was never placed on probation. Ditmars never heard that welcome word. But this defendant did, to his relief one can be certain, immediately after first having been jolted with a sentence not to exceed 15 years.

The order of February 22, 1976, was improper and should be set aside. Phillips was entitled to be released from incarceration at Cottonwood four months after he was sent there as a condition of probation. After that time his probation continued under the direction of the State Board of Corrections. This Board, however, had no authority to confine him beyond that period of time, although it is readily acknowledged that it had no reason to know otherwise. Certainly, too, the trial judge was not at fault in signing the *ex parte* extension and rescinding orders. It would ask too much that a trial judge be required to possess instant recall as to the state of the record of every case which has passed before him.

The prosecuting attorney should be encouraged to discard form-type judgments, or, if using the same, to make certain that judgments of conviction placed before the trial court for signature accurately reflect the sentences which the court has imposed. In all instances copies of judgments should be served on defense counsel. A 19-year-old youth, a first offender, who had gainful and time-consuming employment, has now had almost a full year "in the main yard," and I wonder again, as I did in *Palmer*, how well he has fared, and what is the net gain or loss to the State of Idaho.[6]

Any further proceedings should include Phillips' immediate release and adherence to the provisions of I.C. § 19–2604.

6. Quoting from the Idaho Judges Sentencing Manual, at p. 7.7–2:

There are many advantages to the use of probation.

"The basic idea underlying a sentence to probation is very simple. Sentencing is in large part concerned with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against. Probation proceeds on the theory that the best way to pursue this goal is to orient the criminal sanction toward the community setting in those cases where it is compatible with the other objectives to sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement.' *Introduction to ABA Standards Relating to Probation.*"

Among the arguments in favor of probation is the fact that the cost of supervising one person on probation or parole is approximately 86 cents per day, or $313.90 per year. The cost of holding one inmate in the State Correctional Complex is $18.84 per day, or $6,876.60 per year.

"A further measure of value in working with offenders in the community rather than confining them is the amount of taxable income they earn, thus contributing to the community tax structure. Records indicate that the taxable income of all probationers and parolees being supervised by the Department of Probation and Parole totals $4,560,234 annually.' Idaho Law Enforcement Planning Commission, *Comprehensive Plan for Criminal Justice* (1974), page C–37."

It has also been suggested by many Idaho judges that the use of supervised probation in misdemeanor cases may cut down on the incidence of felonies at a later date.